WILLIAM H. TRUESDALE ET ALS. *vs.* TOWN OF GREENWICH.

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, Js.

Argued January 6th—decided March 21st, 1933.

*Wilbur S. Wright,* with whom, on the brief, was *John R. Deming,* for the appellant (defendant).

*Harold L. Knapp,* for the appellees (plaintiffs).

HAINES, J.   By this complaint, dated June 25th, 1931, the plaintiffs sought an injunction and other equitable relief against the defendant upon substantially the following allegations: That theretofore the defendant town had received by gift from Robert M. Bruce, now deceased, a certain park known as "Bruce Memorial Park" on certain conditions recited in the deed of gift, to wit:   (1)   That except for the fourth tract, the land "shall be forever used for the purpose of a public park, to be known as the 'Bruce Memorial Park,' and shall be devoted to no other use or purpose, except that the building on the second tract may be leased for proper purposes, and the rentals therefrom applied to the care, preservation, and maintenance of said park;"   (2)   "That no building or other structure shall be erected on any part of the fourth tract hereinbefore described, but said tract shall be used for park purposes in connection with the first tract, or for the purpose of a public highway;"   (3)   "That the grantee, from its own funds, and from the aforesaid rentals, so long as said rentals may exist, shall forever keep and maintain said park premises in a good state of preservation for the use of the public, and shall keep all of the buildings on said premises

properly insured and in good repair;" (4) "That my dwelling house, located on the first tract, shall so long as the same is proper and adequate for such purposes, be used as a Natural History, Historical, and Art Museum, for the use and benefit of the public, in such manner and under such rules as may be prescribed by the selectmen of the Town, and the Trustees, (and their successors,) appointed by me in and by a certain trust agreement of even date herewith; and after the trust fund which I have created by said agreement shall have been expended by said Trustees, then said Trustees shall, at its own expense, keep and maintain said museum for the use of the public, either in said building or in another proper building of said park premises to be provided for that purpose."

It was alleged that the defendant was violating these terms and conditions, by maintaining on tracts one and two as described in the deed, a public dog pound, gasoline tanks, a repair shop for town road equipment in which noisy engines are operated, public playgrounds where, among other things, athletics of a professional character are conducted, and at the present time is extending the use of the park for playground purposes by constructing public tennis courts in a portion thereof never devoted to such purposes, recognizing no limitations as to the extent and uses to which said park may be put.

It was further alleged that the plaintiffs were resident citizens and taxpayers and owners of property adjacent to or in the immediate vicinity of the park, and have expended large sums in building their homes there, because of the natural beauty of the park, and in reliance upon its being maintained and preserved as required by the deed of gift, for park purposes only.

They claimed that by the use of the park for business and playground purposes in the manner alleged,

the natural beauty of the park is defaced, and noises and disturbances arise therefrom which are not in keeping with the use of the park in accordance with the terms of the gift; that by reason of these things the public in general and the plaintiffs in particular cannot repair to and enjoy the park for strictly park purposes, and that such uses constitute nuisances.

They alleged special injury because of the damage to their property by such improper use of the park by reason of their proximity to it; that the preservation of the natural beauty of the park is of great value to their properties, affording a wide and pleasant prospect, and that the marketability of their properties is lessened by the defacement of the park and the nuisances complained of. So, they say, they will be irreparably injured and, unless the defendant is restrained, they will suffer irreparable loss for which they have no adequate remedy at law.

By an amended prayer for relief, the plaintiffs sought an injunction in accordance with the following specifications: (1) From using or permitting the use of the park for business purposes and a public playground; or (2) for permitting the park to be used for professional or semi-professional athletics; (3) from erecting the tennis courts now under construction in their present location; (4) from extending the use of the park for athletic and playground purposes beyond those areas heretofore and now devoted to such purposes, and (5) from using the park for any purpose not permitted under the deed of gift.

After extended hearing, the trial court enjoined the defendant from using the park for purposes of maintaining a dog pound, repair shop, road equipment, engines and gasoline, tanks, after September 1st, 1932; and after May 1st, 1932, from the use of the park "for the playing of any game by a professional player of

such game, except one teaching or supervising the playing of such game; and . . . from the taking of collections and the selling of score cards and other merchandise." The term "professional player" as thus used, was defined as "one who is playing for money and/or is playing with or against one who is playing for money and/or is playing with or against an organization or group of players that has received or is under promise and/or expectation of receiving money for playing the one particular game that is being played."

Each party proposed findings of fact and specified numerous reasons of appeal, but aside from corrections in the finding as made, the arguments and briefs are confined to (1) the prohibiting of professional or semi-professional games or players as defined by the trial court, (2) the taking of collections as specified, (3) the selling of score cards and other merchandise, and (4) whether the dog pound is violative of the deed of gift.

The plaintiffs pursue none of their claimed errors in the finding. The only one specifically discussed by the defendant is the finding that "no compulsion other than the sentiment of those present was applied to spectators to contribute or to buy score cards." No change in this finding is warranted, nor does a careful examination of the certified evidence, disclose any other changes which can fairly be made.

A preliminary question of importance and largely controlling, is the right of these plaintiffs to injunctive relief in this action. The trial court enjoined three uses of the park by the defendant, viz.: (1) for the playing of professional and semi-professional games, (2) for repair shop for road equipment, gasoline tanks and engines, and (3) for a dog pound in certain of the buildings.

The first and third uses are not found to be nuisances, but to be improper park purposes under the deed of gift. The defendant concedes that the dog pound is not a proper park use, but contends that the playing of professional and semi-professional games with the specified acts incidental thereto is proper. The second use is found to be a nuisance and the defendant does not question that portion of the judgment. Among the defendant's claims of law which the trial court overruled, was one that if the use was not shown to be a public nuisance, it cannot be enjoined in this action, and another that if the use is shown to be a public nuisance, a private person may not maintain an action for injunctive relief, unless he shows special damage. If we assume, without deciding, that both the first and third uses are improper park uses and contrary to the terms of the gift, it still remains true that the subordinate facts fully justify the conclusion of the trial court that neither of them constituted a public nuisance. Even were they public nuisances, the right of these plaintiffs to injunctive relief in this action could not be maintained in the absence of proof that they or some of them had suffered substantial damage distinct from that sustained in common by the public, and special and peculiar to themselves, and the finding discloses nothing of this character. This principle has long been recognized and acted upon in this State, and very generally elsewhere. *Taylor* v. *Cooke*, 113 Conn. 162, 154 Atl. 349; *Cole* v. *Austin*, 107 Conn. 252, 268, 140 Atl. 108; *Balf Co.* v. *Hartford Electric Light Co.*, 106 Conn. 315, 138 Atl. 132; *Wheeler* v. *Bedford*, 54 Conn. 244, 7 Atl. 22; *Fitzgerald* v. *Merard Holding Co.*, 106 Conn. 475, 138 Atl. 483; 27 R. C. L. p. 1346, §§ 257, 258; *McCormick* v. *Chicago Yacht Club*, 331 Ill. 514, 163 N. E. 418, 60 A. L. R. 763. In the latter case, the court said

(p. 521): "The title to the park, whether in the city or the South Park Commissioners, together with the riparian rights existing by virtue of such ownership, is held in trust for the use of the public. The obstruction or misuse of property so held can be enjoined by individuals only where a special injury is caused by such obstruction or misuse to the person complaining. The individual has no standing in equity on account of public injury. . . . The misuse of public property which does not result in special injury to the individual cannot be complained of except by the people. A private individual cannot maintain a bill to enjoin a breach of public trust, in the absence of statutory authority, without showing that he will be specially injured thereby. . . . It cannot be maintained by the appellants as abutting owners because no interference with their rights as abutting owners is shown, and it cannot be maintained by them as members of the general public because no injury to them other than that which is common to all the public is shown. For such an injury redress must be sought by the city, the attorney general or the state's attorney."

The finding fails to establish this essential element of special and substantial damage to the plaintiffs or any of them. The only facts found pertaining to this subject are the approximate distances of the plaintiffs' residences from the ball field. In their draft-finding they sought to have the trial court find that the use of the park for professional athletics is disturbing to the surrounding property owners and lessens the value and marketability of their properties, especially those of the plaintiffs Truesdale which are immediately adjacent to the ball field. The court did not so find and these claimed facts are not admitted or undisputed.

There is error in part, and the cause is remanded

with direction to modify the injunction in conformity to this opinion.

In this opinion the other judges concurred.