RICHARD BELFORD ET AL. *v.* CITY OF NEW HAVEN ET AL.

HOUSE, C. J., LOISELLE, BOGDANSKI, LONGO and BARBER, Js.

Argued November 5—decision released December 30, 1975

*Hans C. F. Wriedt,* with whom, on the brief, were *Richard L. Hershatter, Peter A. Penczer,* and *Donald H. Tamis,* for the appellants (plaintiffs).

*Roger J. Frechette,* corporation counsel, and *Charles G. Albom,* special assistant corporation counsel, for the appellees (defendants).

BARBER, J. The plaintiffs, who are residents and taxpayers of the city of New Haven, have brought

this action to prevent the defendant city from implementing a proposed agreement with the International Rowing Course Foundation, Inc., for the construction of an olympic-sized rowing course in two of the city's parks. Specifically, the plaintiffs seek to enjoin the city and its mayor from leasing portions of Edgewood Park and West River Memorial Park to the foundation and permitting the foundation to construct a rowing course thereon. The plaintiffs also seek an order remanding the plans for the rowing course to the commissioner of environmental protection for a finding as to its impact upon the public's trust in the air, water or other natural resources of the state, as well as other injunctive relief. The plaintiffs' complaint includes an allegation that "[t]he plaintiffs are residents and taxpayers of the defendant City of New Haven, are members of the public for whose benefit the public parks within said city are operated, managed and maintained, and are persons for whom a public trust has been established in the protection, preservation and enhancement of the air, water and other natural resources of the State of Connecticut within the meaning and intendment of Section 22a-15 of the General Statutes of Connecticut." The court found that the plaintiffs lacked standing to question the proposed changes in the parks and had not proved any claim under the Environmental Protection Act of 1971, and therefore rendered judgment for the defendants, from which judgment the plaintiffs have appealed.

The finding of facts by the trial court is somewhat lengthy. It is subject to only minor corrections.[1]

---

[1] Two of the findings are corrected to conform to the agreement, and one is corrected to change a date which is obviously incorrect in the finding.

We include in this opinion only a summary of the material facts necessary for a proper determination of the issues involved.

The International Rowing Course Foundation, Inc., is a nonprofit organization. An agreement between the city of New Haven and the International Rowing Course Foundation, Inc., gives the foundation the right and obligation to promote, organize and operate competitive and exhibition rowing events at a course to be built in Edgewood Park and West River Memorial Park, and to use its best efforts to attract olympic, international, national and major sectional events to the rowing course. Edgewood Park and West River Memorial Park are contiguous and together comprise the third largest park in New Haven. Three-quarters of the 295 total acres in the two parks are classified as tidal wetlands, portions of which are covered with reed grass, weeds and water and are not used by people. The park presently contains various athletic and recreational facilities, including a rowing course, built in the 1920's, used by the New Haven Rowing Club. The proposed rowing course will require 105 acres and will expand the present rowing course by dredging to a depth of 8 feet, width of 420 feet, and length of 2000 meters (1.2 miles). Plans for the rowing course include stands for approximately five thousand spectators. The agreement provides for the construction of a "mini Olympic village" for unrestricted public use. The facilities in the village will consist of an olympic-sized swimming pool, a baseball field, a football field surrounded by a track, a softball field, a little league field, and a field house with a caretaker's apartment. The plan calls for the demolition of a bridge on Chapel Street and the construction

of a roadway through the park. The cost of the proposed improvement to be paid for by the foundation is now put at ten million dollars. The foundation will charge admission fees of which 5 percent will accrue to the city. The city can anticipate receiving five thousand dollars per year from admission fees. The agreement provides that the foundation will have exclusive use of the rowing course from March until the end of June, except on Sundays after 1 p.m. when not reserved; and that from July 1 to October 31, ordinary boating will be permitted on the rowing course all day Saturday and Sunday, weekdays after 1 p.m., and weekday mornings except when reserved. The public has complained about the water condition in Edgewood Park owing to tidal action as a result of the failure of the city to repair the West River tide gates. The city has not repaired the tide gates because it felt this repair would be the foundation's responsibility. The rowing course area has limited wildlife value in its present state and minimal damage to wildlife resources would occur as a result of the proposed dredging. There will be no permanent damage caused by dredging if the excess material is carted away. The project will have no effect as far as air pollution is concerned.

All of the plaintiffs are residents and taxpayers of the city of New Haven who oppose the construction of the rowing course. One of the plaintiffs owns property abutting the park area.

The court concluded that the use of the parks for a rowing course is a park use, that the plaintiffs did not prove that the proposed change in the parks or the failure to repair the tide gates have caused them to suffer substantial damage distinct from that

sustained in common by the public, and that the plaintiffs therefore do not have standing to question the proposed changes in the parks or the failure to repair the tide gates. The court also concluded that although the plaintiffs, or some of them, might be aggrieved by the discontinuance of a part of Chapel Street, they are premature in challenging the proposed discontinuance in this action, and that the plaintiffs have not proved any claim under the Environmental Protection Act of 1971. The plaintiffs did not make any claims of law respecting the judgment to be rendered.

Although the plaintiffs made no claims of law respecting the judgment to be rendered, we are constrained to consider the merit of their claims on appeal because of the public interest involved. See Practice Book § 223; *State* v. *Dukes,* 157 Conn. 498, 501–502, 255 A.2d 614. The plaintiffs now claim that the court erred in reaching its conclusions and in rendering judgment for the defendants. There is no claim of error, however, directed against the conclusion of the court that although some of the plaintiffs might be aggrieved by the demolition of the bridge over West River they are premature in challenging the proposal, on the ground that they may take an appeal from such discontinuance only after the street has been formally discontinued.

The plaintiffs have pursued three issues on appeal. They claim: (1) that the proposed rowing course constitutes a diversion of park lands from proper park purposes, in violation of restrictive covenants in some of the deeds conveying the park land to the city and in violation of the statute of charitable uses; (2) that the proposal involves an unlawful delegation by the city to the foundation

of the city's exclusive authority and duty to manage, control and police the park lands; and (3) that the construction of the rowing course will result in the pollution and destruction of the city's natural resources.

The argument that the rowing course is not a proper park purpose is not persuasive. " 'In the common understanding, a park, in this country, is a piece of ground in or near a city or town for ornament and as a place . . . for recreation and amusement, and it is usually laid out in walks, drives and recreation grounds.' " *Fenwick* v. *Old Saybrook,* 133 Conn. 22, 29, 47 A.2d 849; *Baker* v. *Norwalk,* 152 Conn. 312, 316, 206 A.2d 428. The use of parks for many recreational or educational facilities has been recognized in various instances to be proper and legitimate. 59 Am. Jur. 2d, Parks, Squares, Etc., § 22; 10 McQuillin, Municipal Corporations (3d Ed., 1966 Rev.) § 28.52b. See *Sierra Club* v. *Hickel,* 433 F.2d 24 (9th Cir.) (large scale commercial-recreational development); *Cascambas* v. *Newport,* 45 R.I. 343, 121 A. 534 (lease of public beach); *795 Fifth Avenue Corporation* v. *New York,* 13 App. Div. 2d 733, 215 N.Y.S.2d 391 (lease of park property for restaurant purposes).

The question of whether the rowing course is or is not a proper park purpose is not before this court, however, since the plaintiffs do not have the requisite standing to raise the issue. The trial court found that the proposed course did not threaten the plaintiffs with any substantial damage distinct from that sustained in common by the public generally, and special and peculiar to themselves. Citing *Truesdale* v. *Greenwich,* 116 Conn. 426, 165 A. 201, the trial court held that the plaintiffs are not the proper parties to challenge the alleged

diversion of the park from park purposes. In the *Truesdale* case, the plaintiffs owned land near a park in the defendant city. They attempted to enjoin the city from permitting the park to be used for purposes other than the park purposes to which the park was restricted by the deed conveying the park to the city, but they did not show that the alleged diversion had resulted in any damages peculiar to themselves. We held that the plaintiffs therefore did not have a right to the injunctive relief sought, quoting extensively from *McCormick* v. *Chicago Yacht Club,* 331 Ill. 514, 163 N.E. 418, in part as follows (p. 521): "A private individual cannot maintain a bill to enjoin a breach of public trust, in the absence of statutory authority, without showing that he will be specially injured thereby. . . . It cannot be maintained by the appellants as abutting owners because no interference with their rights as abutting owners is shown, and it cannot be maintained by them as members of the general public because no injury to them other than that which is common to all the public is shown." *Truesdale* v. *Greenwich,* supra, 432.

Nor have the plaintiffs as residents and taxpayers established the requisite standing to enjoin the city from unlawfully delegating its authority to manage, control and police the park. "It is true that Connecticut has always recognized the jurisdiction of its courts to entertain suits instituted by taxpayers to enjoin the officers of a town from performing illegal acts. *Sauter* v. *Mahan,* 95 Conn. 311, 314, 111 A. 186; *Mooney* v. *Clark,* 69 Conn. 241, 244, 37 A. 506 [1080] ; *New London* v. *Brainard,* 22 Conn. 553, 557. It is a fundamental concept of judicial administration, however, that no person is entitled to set the machinery of the courts in operation

except to obtain redress for an injury he has suffered or to prevent an injury he may suffer, either in an individual or a representative capacity. *Waterbury Trust Co.* v. *Porter,* 130 Conn. 494, 498, 35 A.2d 837. For this reason the plaintiff, relying as he was upon his status as a taxpayer of the town, was obligated to prove some pecuniary or other great injury to himself. It was not enough that he could qualify as a taxpayer. He had to go further. He had to establish that the alleged illegal contract would, if carried out . . . result, directly or indirectly, in an increase in his taxes or would, in some other fashion, cause him irreparable injury." *Bassett* v. *Desmond,* 140 Conn. 426, 430, 101 A.2d 294. See *Atwood* v. *Regional School District No. 15,* 169 Conn. 613, 617, 363 A.2d 1038.

The plaintiffs make the claim that they have statutory standing to maintain this action by authority of the Environmental Protection Act of 1971, which is chapter 439 of the General Statutes. The purpose of the act is contained in § 22a-15.[2] The broad language of the act gives any person the right to bring an action for declaratory and equitable relief against pollution.[3] It is clear that one

[2] "[General Statutes] Sec. 22a-15. DECLARATION OF POLICY. It is hereby found and declared that there is a public trust in the air, water and other natural resources of the state of Connecticut and that each person is entitled to the protection, preservation and enhancement of the same. It is further found and declared that it is in the public interest to provide all persons with an adequate remedy to protect the air, water and other natural resources from unreasonable pollution, impairment or destruction."

[3] "[General Statutes] Sec. 22a-16. ACTION FOR DECLARATORY AND EQUITABLE RELIEF AGAINST POLLUTION. The attorney general, any political subdivision of the state, any instrumentality or agency of the state or of a political subdivision thereof, any person, partnership, corporation, association, organization or other legal entity may maintain an action in the superior court for the county wherein the defendant is located, resides or conducts business, except that where the

basic purpose of the act is to give persons standing to bring actions to protect the environment. Johnson, "The Environmental Protection Act of 1971," 46 Conn. B.J. 422; see 61 Am. Jur. 2d, Pollution Control, § 4. Such standing, however, is conferred only to protect the natural resources of the state from pollution or destruction. General Statutes § 22a-16. The act does not, as the plaintiffs urge, confer standing upon individuals to challenge legislative decisions of a municipality which do not directly threaten the public trust in the air, water and other natural resources of this state. Although the United States Supreme Court has in recent years greatly expanded the concept of standing; see *Ducharme* v. *Putnam,* 161 Conn. 135, 138, 285 A.2d 318; it has recently held that where a party does not rely upon any specific statute authorizing invocation of the judicial process his standing depends on whether he has a sufficient "personal stake in the outcome of the controversy" and he is not entitled to vindicate his own value preferences through the judicial process. *Sierra Club* v. *Morton,* 405 U.S. 727, 731–40, 92 S. Ct. 1361, 31 L. Ed. 2d 636. See *Warth* v. *Seldin,* 422 U.S. 490, 95 S. Ct. 2197, 45 L. Ed. 2d 343. The conclusion of the court that the plaintiffs do not have standing to question the proposed changes in the parks or the failure to repair the tide gates cannot be disturbed.

The trial court permitted the plaintiffs to present evidence on the issue of pollution. It nevertheless

state is the defendant, such action shall be brought in Hartford county, for declaratory and equitable relief against the state, any political subdivision thereof, any instrumentality or agency of the state or of a political subdivision thereof, any person, partnership, corporation, association, organization or other legal entity, acting alone, or in combination with others, for the protection of the public trust in the air, water and other natural resources of the state from unreasonable pollution, impairment or destruction."

concluded that the plaintiffs did not prove any claim under the Environmental Protection Act of 1971, and that the city must get proper approval before it may proceed with any work in the tidal wetlands area of the park. This conclusion is tested by the finding and must stand unless it is legally or logically inconsistent with the facts found or unless it involves the application of some erroneous rule of law material to the case. *Sea Beach Assn., Inc.* v. *Water Resources Commission,* 164 Conn. 90, 93, 318 A.2d 115. A conclusion will not be disturbed by this court unless it is such that it could not reasonably and logically be reached by the trier. *Thomas* v. *Roper,* 162 Conn. 343, 347, 294 A.2d 321. The conclusion reached in this case is reasonably and logically supported by the subordinate facts in the finding.

There is no error.

In this opinion the other judges concurred.