[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM DATED MARCH 27, 1995
On February 6, 1995, the City Council of the City of Bridgeport enacted an ordinance which stated: "BE IT RESOLVED, That the City Council endorses a non-binding opinion survey/poll of registered voters authorizing the use of city voting machine, polling places, polling place operators, as appropriate, on March 28, 1995 between the hours of 6:00 a.m. to 8:00 p.m. with the polling question attached hereto. This non-binding opinion survey will be consistent with all other State Statutes: and be it further RESOLVED, That there will be no use or expenditure of city funds."
Attached to the ordinance is a document which states the following:
Poll Question
 "SHALL CASINO GAMING ACTIVITY ASSOCIATED WITH FAMILY ENTERTAINMENT ATTRACTIONS BE PERMITTED IN THE CITY OF BRIDGEPORT?"
Explanation of Poll Question
 The Connecticut General Assembly is expected to consider legislation to expand legalized gaming in Connecticut and to designate Bridgeport as a host city for casino gaming. The Governor has asked that the citizens of the City of Bridgeport vote to express their level of support before the State legislature formally acts. CT Page 2547-A
 It is expected that the legislation will encourage any casino operator to include the development of family entertainment attractions of significance including but not limited to a theme park, performing arts space, a hotel, shopping establishments and restaurants. Any such development is expected to create thousands of jobs and the legislation will likely call for a percentage of employees to be residents of the City of Bridgeport. Additionally, it is expected that a certain percentage of revenues generated by the complex would be dedicated for property tax relief and an economic development fund.
 A "Yes" vote is a vote to encourage the Connecticut General Assembly and the Governor to enact legislation to permit casino gaming in Bridgeport in conjunction with family entertainment attractions. A "No" vote is a vote to discourage the Connecticut General Assembly from enacting such legislation.
Date and Time of Poll in the City of Bridgeport
 The date set for the poll question will be Tuesday, March 28, 1995. Polling hours shall be 6:00 a.m. to 8:00 p.m. at the regularly established polling locations.
The plaintiff, William Garrett, has brought this action seeking to enjoin the nonbinding referendum. The plaintiff alleges that there is no authority for the city to hold such a referendum and that such an illegal venture will cost the city money. The matter came before the court upon its initial filing and the plaintiff's submission of an application for an ex parte injunction. Such applications are much disfavored by the courts except upon the clearest of showings. Because duly authorized attorneys of the Office of the City Attorney of the City of Bridgeport had been notified of the plaintiff's filing and were available, the court convened a hearing on the plaintiff's application. The day following that hearing, the city sought to remove the matter to the United States District Court for the District of Connecticut. That court (Dorsey, J.) summarily remanded the case back to this court. CT Page 2547-B
As a threshold matter, the city claims that the plaintiff lacks standing to maintain this action. Unless a party has standing, he may not seek an adjudication of the issues he presents. Oak Leaf Marina, Inc. v.Ertel, 23 Conn. App. 91, 94-95, 579 A.2d 568 (1990). "The plaintiff's status as a taxpayer does not automatically give h[im] standing to challenge alleged improprieties in the conduct of the defendant town. AlarmApplications Co. v. Simsbury Volunteer Fire Co.,179 Conn. 541, 549, 427 A.2d 822 (1980); Bell v. Planning Zoning Commission, 174 Conn. 493, 497-98,391 A.2d 154 (1978); Belford v. New Haven, 170 Conn. 46,52-53, 364 A.2d 194 (1975); Gannon v. Sanders,157 Conn. 1, 6-9, 244 A.2d 397 (1968); Truesdale v.Greenwich, 116 Conn. 426, 430-32, 165 A. 201 (1933). The plaintiff must also allege and demonstrate that the allegedly improper municipal conduct cause[d her] to suffer some pecuniary or other great injury. (Internal quotation marks omitted.) Alarm Applications Co.v. Simsbury Volunteer Fire Co., supra; Belford v. NewHaven, supra, 53; Atwood v. Regional School DistrictNo. 15, 169 Conn. 613, 617, 363 A.2d 1038 (1975);Bassett v. Desmond, 140 Conn. 426, 430,101 A.2d 294 (1953); see 18 E. McQuillin, Municipal Corporations (3d Ed. Rev. 1993) §§ 52.12 through 52.14, 52.24. It is not enough for the plaintiff to show that her tax dollars have contributed to the challenged project; Bell v. Planning Zoning Commission, supra, 498; Gannon v. Sanders, supra, 7; the plaintiff must prove that the project has directly or indirectly increased her taxes; Atwood v. Regional School DistrictNo. 15, supra, 617; or, in some other fashion, caused her irreparable injury in her capacity as a taxpayer.Bassett v. Desmond, supra; Cassidy v. Waterbury,130 Conn. 237, 245, 33 A.2d 142 (1943)." Sadlowski v.Manchester, 228 Conn. 79, 83, 634 A.2d 888 (1993) (per curiam). The plaintiff has not satisfied this burden.
The test restated in Sadlowski is now the law, despite the lack of clarity in the test for taxpayer standing in earlier cases. Sadlowski was presaged byAlarm Applications Co. v. Simsbury Volunteer Fire Co.,supra, 179 Conn. 541, in which the defendant volunteer fire company was "engaged in selling and servicing fire extinguishers and fire prevention equipment for CT Page 2547-C profit within the town of Simsbury and contiguous areas. Such retailing activities of the fire company require it to engage in contracts for the purchase and subsequent sale of fire extinguishers, creating debts against it to be paid in the future." Id., 543. A taxpayer brought a law suit seeking a declaratory judgment that such activities were illegal. He alleged that he was a taxpayer. "But he . . . failed to allege that the challenged activity will result, directly or indirectly, in an increase in his taxes or will in some fashion cause him to suffer `great injury,' as our case law requires . . . He simply allege[d] that the property taxes paid by him to the defendant fire district `have, by necessary and permissible inference, been used in the conduct of said unauthorized business by the . . . [defendant] Fire Company.'" Id., 550. The Supreme Court held that the complaint was properly stricken, stating: "There must be more alleged than the mere use by the municipality of tax revenues for an improper purpose in order to confer standing upon a taxpayer who seeks to challenge such action." Id., 551.
In Belford v. New Haven, supra, 170 Conn. 46, "[t]he plaintiffs, who are residents and taxpayers of the city of New Haven, . . . brought [an] action to prevent the defendant city from implementing a proposed agreement with [a nonprofit organization] for the construction of an olympic-sized rowing course in two of the city's parks. Specifically, the plaintiffs seek to enjoin the city and its mayor from leasing portions of [parks] to the foundation and permitting the foundation to construct a rowing course thereon." Id., 47. The court held that the plaintiffs lacked standing as residents and taxpayers to bring such an action. "[T]he plaintiff, relying as he was upon his status as a taxpayer of the town, was obligated to prove some pecuniary or other great injury to himself. It was not enough that he could qualify as a taxpayer. He had to go further. He had to establish that the alleged illegal contract would, if carried out . . . result, directly or indirectly, in an increase in his taxes or would, in some other fashion, cause him irreparable injury.'" Id., 53.
In Atwood v. Regional School District No. 15, supra,169 Conn. 613, the plaintiffs, taxpayers of the towns CT Page 2547-D of Middlebury and Southbury, brought an action "seeking a declaratory judgment to determine whether a referendum held in those towns resulted in an authorization for the appropriation of funds for the purchase of land for the construction of a new regional high school, and for alterations to the present high school, and an authorization to issue bonds and notes to defray that appropriation. The plaintiffs also sought injunctive relief." Id., 614. In that case, it was "clear, given the stipulated facts . . ., that the proposed bond issue would increase the plaintiffs' taxes to some extent." Id., 617. The supreme court upheld the trial court's finding that the plaintiffs had standing.
In Gannon v. Sanders, supra, 157 Conn. 1, the plaintiff taxpayer brought an action seeking "a declaratory judgment concerning the efficacy of the steps taken to establish a regional school district . . ." Id., 2. "The substance of his contention is that the district is illegally established because a new regional study committee was not appointed following the [first] referendum and prior to the [second] referendum." Id., 8. The Supreme court held that the plaintiff had no standing to bring the action since "[j]ust how the procedure which was followed affected the plaintiff goes entirely unmentioned." Id.
In Cassidy v. Waterbury, supra, the defendant city leased and installed parking meters on its streets. The plaintiff taxpayer brought an action for an injunction compelling their removal. "The plaintiff claim[ed] that the making of the contract for the leasing of the meters was not in compliance with various provisions of the charter of the city; thus he says that it was executed in behalf of the city by the mayor at the request of the board of police commissioners but that he had no authority to bind the city in this way, that there was no order for `the purchase' of the meters by the director of purchases, that no appropriation for the expense entailed had been made when the contract was executed and that the contract required an expenditure of more than $1000 and therefore competitive bids were necessary. 21 Spec. Laws 590, 591, 76, 83, 85; 23 Spec. Laws 651, 653, 22, 30. In his complaint the plaintiff alleged that he was a taxpayer in the city as CT Page 2547-E well as a property owner, and in his prayers for relief he asked, in addition to an injunction requiring the defendant to remove the meters in the streets adjacent to his property, one restraining the defendant from installing or maintaining other meters on the streets in front of his property `and in other streets and sidewalks in the city.' But the gravamen of the complaint was that he had been injured in his rights as a property owner, and the court in its judgment granted him relief in that capacity." Id., 244-245. Said the court: "It may be that, while the board of police commissioners had authority to install a system of parking meters in the city, it could not impose on the city any financial obligation except in accordance with the charter provisions. The police commissioners had authority to install the meters, and if in procuring themthe provisions of the city charter were not compliedwith, this does not entitle the plaintiff as the owner ofthe property in front of which some of them wereinstalled to compel their removal . . . Nor as a taxpayeris he entitled to the injunction sought. A taxpayer is not entitled to an injunction restraining such illegal conduct as the plaintiff claims unless he has suffered a pecuniary or other direct loss in that capacity." (Emphasis added.) Id., 245.
This brings us to Bassett v. Desmond, supra,140 Conn. 426, on which the plaintiff largely relies. "Th[at] case readily divides itself into two parts of which the first deals with the parking meter contract." Id., 428. The plaintiff taxpayer brought an action to restrain the city of Milford from performing a contract to purchase parking meters from a private company. Under the contract, the cost of the meters was to be paid out of the proceeds of the parking meters. Id., 428-29. Using what has now become familiar language, the Supreme Court found that the plaintiff had no standing: "[T]he plaintiff, relying as he was upon his status as a taxpayer of the town, was obligated to prove some pecuniary or other great injury to himself. It was not enough that he could qualify as a taxpayer. He had to go further. He had to establish that the alleged contract would if carried out . . . result, directly or indirectly, in an increase in his taxes or would, in some other fashion, cause him irreparable injury." Id., 430. CT Page 2547-F
"The other part of the [Bassett v. Desmond] case deals with the contract for painting the town hall."Bassett v. Desmond, supra, 431-32. It is this part of the case on which the plaintiff relies. The Milford budget had included an item of $1250 for renovating the town hall. Bids were requested for painting town hall, the lowest of which was $3500. With the prior assent of the town's finance committee, the town council approved a budgetary transfer of $3500 and authorized the acceptance of the bid. Id., 432. Said the Supreme Court: "The foregoing recital discloses a problem other than that presented by the meter contract. The situation with respect to the painting contract is different, since the contractor was concededly paid from the town general funds, that is, from revenue derived in part from the plaintiff's taxes. The plaintiff had standing before the court, then, if he proved that the payment for the painting job was illegal, since it directly affected him in a pecuniary manner. Nor was his standing lowered in any degree because the pecuniary effect upon him was extremely small." Id., 432.
This language and this holding stand in stark contrast with the case law which follows Bassett. Specifically, the second holding in Bassett, finding taxpayer standing, is inconsistent with the test for such standing restated in Sadlowski v. Manchester, supra,228 Conn. 83, and with the statement in Alarm ApplicationsCo. v. Simsbury Volunteer Fire Co., supra,179 Conn. 551, that "[t]here must be more alleged than the mere use by a municipality of tax revenues for an improper purpose in order to confer standing upon a taxpayer who seeks to challenge such action."
The second holding in Bassett, at page 432, was refashioned in American-Republican, Inc. v.Waterbury, 183 Conn. 523, 441 A.2d 23 (1981), in which plaintiff taxpayers sought an injunction ordering the rescission of the purchase of certain real estate by the city of Waterbury. The court stated the now-familiar test for taxpayer standing, invoking Bassett. "`[N]o person is entitled to set the machinery of the courts in operation except to obtain redress for an injury he has suffered or to prevent an injury he may CT Page 2547-G suffer, either in an individual or a representative capacity.' Bassett v. Desmond, 140 Conn. 426, 430,101 A.2d 294 (1953). Standing does not result automatically upon establishing that a party qualifies as a taxpayer. A plaintiff who relies upon such a status in bringing an action to question some alleged illegal activity on the part of municipal officials must also prove that the transaction involved will probably `result, directly or indirectly, in an increase in his taxes or would, in some other fashion, cause him irreparable injury.' Id. Once a probable increase in his tax burdenfrom the challenged activity has been shown, a plaintiff has passed the threshold of standing even though the pecuniary effect upon him may be extremely small. Id., 432 . . ." (Emphasis added.) Id., 526. With the exception of this recasting of Bassett, it does not appear that the second holding in Bassett has ever again been cited by our appellate courts in support of a finding of taxpayer standing.[1] While it may be that the distinction in our case law is simply unsatisfactory, this court now invokes the "established rule of law that a later decision overrules prior decisions which conflict with it, whether such prior decisions are mentioned and commented upon or not." State v. Dukes, 209 Conn. 98,110, 547 A.2d 10 (1988). The second holding inBassett v. Desmond, supra, 140 Conn. 432, cannot support the plaintiff's claim of standing.
While it may be that taxpayer monies from the general fund of the city of Bridgeport may have been expended in preparation for the referendum on casino gaming and may continue to be expended for that purpose, the plaintiff has not proven that these expenditures will directly or indirectly increase his taxes or that he has been caused some other irreparable injury in his capacity as a taxpayer."Sadlowski v. Manchester, supra, 228 Conn. 83. Therefore, the plaintiff lacks standing to maintain this action and this application for temporary injunctive relief.
"[I]n the absence of standing, the court lacks subject matter jurisdiction to determine the merits of the case. Tomlinson v. Board of Education, 226 Conn. 704,717-18, 629 A.2d 333 (1993); Stroiney v. CrescentCT Page 2547-HLake Tax District, 205 Conn. 290, 294, 533 A.2d 208
(1987); Belford v. New Haven, supra, 52-53. Standing is the legal right to set judicial machinery in motion. One cannot rightfully invoke the jurisdiction of the court unless he [or she] has, in an individual or representative capacity, some real interest in the cause of action, or a legal or equitable right, title or interest in the subject matter of the controversy . . . Standing is not a technical rule intended to keep aggrieved parties out of court; nor is it a test of substantive rights. Rather it is a practical concept designed to ensure that courts and parties are not vexed by suits brought to vindicate nonjusticiable interests and that judicial decisions which may affect the rights of others are forged in hot controversy, with each view fairly and vigorously represented . . . (Citations omitted; internal quotation marks omitted.) UnisysCorp. v. Department of Labor, 220 Conn. 689, 693,600 A.2d 1019 (1991)." Sadlowski v. Manchester,supra, 228 Conn. 83-84.
"A possible absence of subject matter jurisdiction must be addressed and decided whenever the issue is raised." Sadlowski v. Manchester, supra, 228 Conn. 84.
The application for injunctive relief is dismissed.