[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MFS NETWORK TECHNOLOGIES INC. MOTION TO DISMISS
This case involves an attempt to seek a preliminary and permanent injunction enjoining the State of Connecticut Department of Administrative Services from awarding a contract for a telecommunication system to anyone other than the plaintiff. The defendants are the department and the company which was awarded the contract by the department MFS Network Technologies, Inc. (MFS). The department has filed a motion to dismiss and MFS has also filed a motion to dismiss. The motion before the court is the motion filed by MFS which claims the plaintiff lacks standing to bring this action.
A reading of the MFS motion and the memorandum attached to it indicates that it is directed toward the complaint and claims that the face of the complaint makes clear that there is no standing. The plaintiff of course maintains the original complaint does establish standing but in order to render the issue raised by the motion moot has filed an amended complaint. The plaintiff in so doing relies on Section 175 of the practice book which is based on § 52-128 of CT Page 10515 the general statutes. Those provisions allow a plaintiff to "amend any defect mistake or informality . . . on the complaint . . . during the first thirty days after the return day." Such an amendment does not require court approval or any action by the court; a plaintiff may amend as of right.
There are at least two questions before the court.
 (1) Apart from the right to amend and considering the original complaint should the motion to dismiss for lack of standing be granted?
 (2) If a motion to dismiss claiming lack of standing is addressed to the original complaint can a plaintiff render the motion moot by filing an amended complaint within thirty days of the return date?
The real difficulty presents itself of course in addressing question 2 if the court concludes that the motion to dismiss as to the original complaint should otherwise been granted. The court believes it should answer both questions.
(1)
The motion to dismiss is addressed to the complaint and is based on a lack of standing. The motion to dismiss here is analogous to the old common law motion to erase and is an appropriate pleading because standing goes to the court's subject matter jurisdiction, (of which were later), Reitzer vBoard of Trustees of State Colleges 2 Conn. App. 196, 201
(1984), Housing Authority v Local 1161 1 Conn. App. 154, 157
(1984), both opinions authored by Borden J.
When a motion to dismiss does not seek to introduce facts outside the record, it admits all well-pleaded facts and the complaint is construed in the manner that is most favorable to the plaintiff, American Laundry Machinery Inc. v State190 Conn. 212, 217 (1983), Reitzer v Board of Trustees supra at p. 201. As American Laundry, makes clear, however, if a court is deciding such a motion on the basis of the complaint, where the allegations are essentially legal conclusions, the allegations "are to be tested by the facts alleged, and add nothing to the strength of the pleading", id. p. 217, citingWeinstein v Mutual Trust Life Ins. Co. 116 Conn. 654, 659
CT Page 10516 (1933).
The defendant MFS in its motion argues that the plaintiff's complaint does not set forth the necessary allegations to establish standing under the reasoning of the following cases: Unisys Corp. v Dept. of Labor 220 Conn. 689
(1991), Ardmare Construction Co. v Freedman 191 Conn. 497
(1983), Spiniello Construction Co. v Manchester 189 Conn. 539
(1983). These courts substantially adopted the position set forth in Scanwell Laboratories Inc. v Shaffer 424 F.2d 859, 864
(D.C., 1970) that "the public interest in preventing the granting of contracts through arbitrary or capricious action can properly be vindicated through a suit brought by one who suffers injury as a result of the illegal activity. . ."
Thus "where fraud, corruption or acts undermining the objective and integrity of the bidding process (exist), an unsuccessful bidder (does) have standing under the public bidding statute" (§ 4a-59), Ardmare Construction Co. v Freedman
191 Conn. at pp. 504-05.
Reading the allegations of the complaint in the light most favorable to the plaintiff does it set forth sufficient grounds on which to base standing as just defined.
The court will review the paragraphs of the complaint that are relevant on this issue. Paragraph 10 sets forth the plaintiff's bid and that of MFS. Paragraph 11 alleges the plaintiff's bid was some $83,000 lower then that of MFS on this $17 million dollar contract. Paragraph 12 alleges that no other bidder submitted a bid for performance of the contract lower than the plaintiff's bid. Paragraph 14 alleges the department has never declared the plaintiff's bid to be non-responsive or in any manner non-complaint. These are the only relevant factual allegations.
In paragraphs 15 and 16 conclusory allegations are made that the plaintiff was the bidder whose bid was the lowest of those bidders possessing the skill and integrity to do the job and that the MFS bid was "non-responsive, non-complaint, defective, and unbalanced." Paragraph 17 says that in awarding the project to MFS Section 4a-59 of the general statutes was violated. Paragraph 18 alleges that by giving the contract to MFS the defendant department "acted improperly, unreasonably and in abuse of its discretion and, CT Page 10517 in so acting, defeated the very object and integrity of the competitive bidding process." That's basically it.
The complaint is brought under § 4a-59 of the general statutes. An examination of that statute indicates that the "lowest responsible qualified bidder" is not to be determined by and the state isn't obligated under the statute to award the contract to the bidder whose bid is the lowest monetary amount. Probably in part because of the discretionary power retained by the state under the statute the court in Spiniello
and Ardmare for standing purposes requires allegations of "fraud, corruption or acts undermining the objective and
integrity of the bidding process Ardmare at 191 Conn. pp. 504-04
(emphasis added). The court goes on to say at page 505 "we are unable to agree with the trial court that the commissioner's action so undermined the competitive bidding process as to fall within the exception recognized inSpiniello. There was no allegation of fraud or favoritism nor was either proven" (emphasis added). Broad allegations such as set forth in paragraphs 15 and 16 won't do insofar as they try to assert standing on the basis of some violation of a general purpose as expressed in the statute to award contracts to the most efficient, responsible or least expensive bidder. The court by its rule in Spiniello recognizes broad discretion in the state to decide these matters, cf Austin v HousingAuthority 143 Conn. 338, 346 (1956), Vellaco v. City of Derby27 Conn. Sup. 135, 37 (1966). What must be alleged as Ardmare
makes clear is fraud or favoritism, cf facts alleged inSpiniello where favoritism found by trial court, bidding instructions given only to one party, 189 Conn. at pp. 542-43, cf Unisys Corp v. Dept. of Labor 220 Conn. at p. 691. Paragraphs 15 and 16 just do not make the necessary allegations and even if paragraph 18 is given a very broad reading the problem with it as a vehicle to assert standing under Spiniello and Ardmare is that there are no factual
allegations to support a claim of fraud or favoritism. Allegations in paragraphs 15, 16, 17 and 18 are conclusory and can't provide the basis of a finding of standing. But the plaintiff seeks to avoid an adverse decision on the motion to dismiss by filing an amended complaint pursuant to § 175 of the Practice Book and the court will now address the propriety of such a procedure.
(2) CT Page 10518
The plaintiff claims that the motion to dismiss is moot because within the thirty days allowed by § 52-128 of the General Statutes and § 175 of the Practice Book it has the right to amend its complaint without seeking the permission or the intervention of the court. The latter observation becomes important because cases like Gurliacci v Mayer 218 Conn. 531,545 (1991) Statewide Grievance Committee v Rozbicki 211 Conn. 232,245 (1989) and Cahill v Board of Education 198 Conn. 229,238 (1985) stand for the proposition that once the court's subject matter jurisdiction is attacked all other action in the case must stop and the Gurliacci court held that by considering a motion to amend prior to ruling on the jurisdictional challenge the court violated this sacrosanct rule. 218 Conn. at page 545. Cases denying a motion to dismiss where jurisdiction had been attacked but where the defect has been cured pursuant to a P.B. § 175 amendment point to the fact that the Gurliacci rule isn't violated because the amendment requires no action by the court, Tomasso et al. v.Comm. of Transportation CV95-0705736 (Sup. Ct 1995) (claim of no jurisdiction because of sovereign immunity), Sleeping GiantAssoc. Ltd. v. Zikourous (Sup. Ct, 1993, Case Base 6733) (defective notice to quit, statutory requirement), Evama v.Weicker 1994 Sup. Ct Casebase 6175 (lack of standing).
These cases and the plaintiff here rely on Sheehan vZoning Commission 173 Conn. 408 (1977). Sheehan was a zoning appeal case but the appeal failed to meet statutory requirements since it contained only a recognizance of an individual without any surety. The defendant filed a motion to erase which was the common law vehicle used to attack jurisdictional defects apparent on the face of the pleadings. After the motion to erase was filed the defendant amended their appeal within thirty days of the return date pursuant to § 52-128 which permits amendment as of right. The court said a variety of interesting things. It described the failure to provide a proper recognizance as a "serious irregularity" id. p. 411, it never denied that the motion to erase raised a jurisdictional question, see footnote 5, but then the court said the defect "did not destroy the jurisdiction of the court over the subject matter of the action", and the defect "could have been waived by the defendant," id. p. 411. Thus it described the defect as "circumstantial" id. p. 413. The court refers to Village Creek Homeowner's Assoc. v PublicUtilities Commission 148 Conn. 336 (1961) where the court granted a motion to erase. Sheehan distinguished VillageCT Page 10519Creek by saying:
 The present case may be distinguished from Village Creek in that there was no `motion or pleading to `be entertained' by the court in this case because the amendment was as of right under § 52-128 and Practice Book 131 (predecessor to P.B. § 175) and took effect abinitio.
Perhaps more importantly the Sheehan court noted that inVillage Creek the appeal was fatally defective since it contained no citation directing a sheriff to make service. This the court said was a jurisdictional defect that could not be cured by amendment.
I believe a common sense approach would permit this amendment. All that will happen here is that if the defendant prevails on the motion to dismiss the plaintiff will be forced to undergo the expense and inconvenience of filing a new suit. There is no claim here of a due process violation because of lack of notice arising from the service made on the parties. The defendant MFS certainly has notice of the statute on which the suit is based and can't claim the complaint doesn't inform it of the general nature of the claim against it. It is somewhat odd that just because we have a fact as opposed to a notice pleading jurisdiction defects in a complaint such as alleged here could be raised to the level of a subject matter jurisdiction claim which in turn can be used as an argument against permitting the amendment proposed here.
Since there are no due process notice problems — adequate service was made and the complaint informs the defendant of the general nature of the legal claim against it — why shouldn't the defendant MFS be required to show prejudice before its motion is granted if in fact a plaintiff has amended its complaint within the thirty day period granting absolute right to amend?
No actual prejudice has been shown here. The only possible prejudice will be an after the fact creation if it is found that the trial court mistakenly denied the motion to dismiss because of the amendment. But that non-real world prejudice will not be based on due process or fairness considerations but on historical definitions of jurisdiction, subject matter jurisdiction, and circumstantial defect which CT Page 10520 are neither easily understood or applied.
The resolution of this issue for me lies in an analysis of Sheehan. Some jurisdictional defects can be addressed by a motion to erase and are "serious irregularities" but they do not destroy the jurisdiction of the court over the subject matter of the action for all purposes, id. p. 411; they are "circumstantial".
In other words such circumstantial jurisdictional defects can be corrected by amendment within the thirty day grace period or depending on the defect, can be waived.
On the other hand at the and of the opinion the Sheehan
court indicated some types of jurisdictional defects are not curable by amendment whether within the grace period or by permission of the court, id. at page 413.
Since the whole universe of jurisdictional defects bySheehan's terms is composed of subject matter jurisdictional defects and those that are not it follows that, if the opinion is read as a whole, subject matter jurisdictional defects can't be corrected by amendment.[1] The case Conti v. Murphy23 Conn. App. 174, 178 (1990), recognizes the fact that some jurisdictional defects which can be addressed by a motion to dismiss do not go to the court's "subject matter" jurisdiction.
So the question becomes does the standing issue raised here involve the "subject matter" jurisdiction of the court.
In two previously cited cases Reitzer v. Board of Trustees
supra the court did say standing went to the subject matter jurisdiction of the court. However, these cases didn't deal with the specific problem now before the court and they used the term "subject matter jurisdiction" too broadly. There's no doubt a case can be dismissed for a jurisdictional defect even if that defect doesn't rise to the level of "subject matter jurisdiction" so there was no need in those cases to define standing as a "subject matter" jurisdictional problem, see Conti v. Murphy supra.
A good discussion of subject matter jurisdiction in the context of common law and statutory standing is contained inConn. Allied Business Legal Rights Assoc. v. Woodrow WilsonGaitor 10 CLT No. 13, p. 12 (1984). There the court said: CT Page 10521
 It is unclear whether standing relates to subject matter jurisdiction in Connecticut law. The Connecticut Constitution contains no case or controversy requirement like that found in article III of the United States Constitution; however the courts have recognized that a person is not "entitled to set the machinery of the courts in operation except to obtain redress for an injury suffered . . . either in an individual or representative capacity." Alarm Application Co. v. Simsbury Volunteer Fire Co., 179 Conn. 541, 546
(1980). Standing is a "practical concept designed to ensure that courts and parties are not vexed by suits brought to vindicate nonjusticiable interests and that judicial decisions which may affect the rights of others are forged in hot controversy, with each view fairly and vigorously represented." Maloney v Pac, 183 Conn. 313, 320 (1981). Standing has been characterized as a jurisdictional question. Gannon v Sanders, 157 Conn. 1, 6 (1968). However, the Supreme Court has also stated that standing "focuses on the party seeking to get his complaint before the court and not on the issues he wishes to have adjudicated . . . the question is whether the person whose standing is challenged is a proper party to request an adjudication of the issue and not whether the controversy is otherwise justiciable . . . ." Berlin v Santaguida, 181 Conn. 421, 423-24 (1980) (citations omitted). It is clear that the implication from cases such as Berlin is that the court has subject matter jurisdiction over the issue, but that the party seeking relief is not one to whom relief may be granted. Such an interpretation is supported by the Supreme Court's willingness to allow CT Page 10522 standing to be challenged by motion to strike, i.e., that the complaint by that party, fails to state a claim upon which relief can be granted. See, e.g., Alarm Applications Co., 179 Conn. at 550-551. Such an interpretation is consistent with the Supreme Court's hesitancy to "give an expansive interpretation to the concept of `subject matter jurisdiction.'" See Vogel v. Vogel, 178 Conn. 358, 363
(1979).
 Where a statute or court rule sets prerequisites to suit by a particular plaintiff, a plaintiff not meeting the statutory criteria lacks standing and the court is said to lack jurisdiction over the case. Thus where a statute allows only an aggrieved party to appeal from an agency decision, the court lacks subject matter jurisdiction over an appeal brought by a nonaggrieved party. Mystic Marinelife Aquarium, Inc. v. Gill, 175 Conn. 483, 493 (1978); see Hall v. Planning Commission, 180 Conn. 442, 444
(1980). See also Poly-Pak Corporation of America v. Barrett, 1 Conn. App. 99, 103
(1983) (foreign corporation's failure to comply with Connecticut General Statutes § 33-412 appropriately raised by motion to dismiss); Gannon, 157 Conn. at 6 (court lacked subject matter jurisdiction of declaratory judgment action where plaintiff failed to meet Practice Book § 390).
 Only by recognizing the differentiation of statutory and common-law standing by the Supreme Court can that court's standing cases be reconciled. See Belford v. New Haven, 170 Conn. 46, 53 (1975). Such a differentiation is apparent from the manner in which the court tests the right of a party to maintain an action. It first examines the precise grounds on CT Page 10523 which the right is based. See Gannon, 157 Conn. at 7; Maloney, 183 Conn. at 320. Where a plaintiff has alleged common-law, rather than statutory, standing, plaintiff has been allowed to prove injury at trial. Belford, 170 Conn. at 53. Such an analysis is inconsistent with the concept of common-law standing attaining the level of subject matter jurisdiction.
The only disagreement I would have with ConnecticutAllied Business is its suggestion that common law standing doesn't raise jurisdictional questions. Gannon v Sanders157 Conn. 1, 6 (1968) and Reitzer v Board of Trustees2 Conn. App. at pp. 199-201 hold to the contrary. On the other hand those cases perhaps err in implying all jurisdictional attacks go to subject matter jurisdiction as traditionally defined — competence of a court of a court of general jurisdiction to handle a category of cases. Yes if a litigant does not have standing the court has no jurisdiction over that particular litigants suit but it doesn't mean the court as court has no jurisdiction to deal with cases of that type. I believe failure to recognize this distinction unnecessarily limits the ameliorative intent of statute like § 52-128 and P.B. § 175. I believe Sheehan recognized the distinction between types of jurisdictional defect.
True as Conn. Allied Business says the court has said standing is a jurisdictional issue but reading the cases cited by Conn. Allied Business and Sheehan together the only way to harmonize them is to say that unless a statute or court rule sets prerequisites to suit by a particular plaintiff it is the type of jurisdictional defect that can be corrected by amendment as long as the amendment falls within the thirty day grace period and isn't an amendment "entertained" by the court.[2]
Applying this analysis to the case now before the court I just don't read Spinello and Ardmare (by their reference to standing) as intending to set up discrete preliminary requisites that must be met before suit is permitted. The definition given of standing in these cases obviously go to define a cause of action under § 4a-59 of the statute by importing elements of fraud and illegality into the claim. CT Page 10524 Certainly these are the type of "standing" issues that would be postponed to the time of trial since they involve a resolution on the merits.
Under these circumstances it would exalt from [form] over substance to say that in a case where there are no due process service or notice problems a case should be thrown out of court on the pleadings without an opportunity to amend. Even if the pleadings had not been defective as to allegations of standing no separate hearing would be permitted to test standing; it would have to be addressed by summary judgment motion or at the time of trial — in other words the standing question goes to the merits of the course of action. My basic problem is that given the allegations made in this motion to dismiss, although Ardmare used the word standing to define the scope of rights under § 4a-59, I just don't see how it could be said that this court lacks competence to entertain the matter before it as a court of general jurisdiction — that after all is the historic definition of subject matter jurisdiction. If that definition is unnecessarily expanded an undesirable rigidity is introduced into several areas of practice and procedure before the courts.
I will deny the motion to dismiss filed by MFS in light of the amendment of the complaint made pursuant to P.B. § 175.