ARTHUR J. ROCQUE, JR., COMMISSIONER
OF ENVIRONMENTAL PROTECTION *v.*
NORTHEAST UTILITIES SERVICE
COMPANY ET AL.
(SC 16265)

Borden, Norcott, Katz, Palmer and Blue, Js.

Argued May 23—officially released August 8, 2000

*Nancy Burton,* for the appellant (intervenor Fish Unlimited).

*Richard F. Webb*, assistant attorney general, with whom, on the brief, was *Richard Blumenthal*, attorney general, for the appellee (plaintiff).

*Elizabeth C. Barton*, with whom were *Harold M. Blinderman* and, on the brief, *Karen K. Clark*, for the appellees (defendants).

*Opinion*

NORCOTT, J. Fish Unlimited, an environmental intervenor in an action brought by the plaintiff, the department of environmental protection (department),[1] to enjoin the defendants, Northeast Nuclear Energy Company and its parent corporation, Northeast Utilities Service Company, from disposing of allegedly contaminated wastewater from their nuclear power electric generating facility into the Long Island Sound, appeals from the judgment of the trial court granting the parties' joint motion for a stipulated judgment. Fish Unlimited claims that the trial court improperly: (1) granted the motion for stipulated judgment; and (2) deprived it of meaningful participation in the matter. We affirm the judgment of the trial court.

The record reveals the following relevant facts. The department commenced this environmental enforcement action against the defendants on November 10, 1997, alleging violations of a National Pollution Discharge Elimination Systems permit. On May 27, 1998, the Citizens Regulatory Commission (Citizens) moved to enter the case as an environmental intervenor.[2] The trial court granted the motion to intervene on July 20, 1998. While discovery progressed, the department and the defendants began settlement negotiations.

---

[1] The action was brought in the name of Arthur J. Rocque, Jr., in his official capacity as the commissioner of environmental protection. For purposes of this opinion, we refer to the plaintiff as the department.

[2] Although Citizens was an intervenor in the trial court, it is not a party to this appeal.

The department and the defendants filed a joint motion for stipulated judgment on September 24, 1998. The stipulation provided that the defendants would pay $1.2 million, consisting of a $700,000 civil penalty and $500,000 in supplemental environmental project funding. Two hundred thousand dollars of the funding was earmarked for educational programs at Mystic Marinelife Aquarium in Mystic. The stipulation also provided for an audit system of the defendants' operations as well as the implementation of environmental initiatives to improve the performance of their Millstone Nuclear Power Generating Station. The stipulation also provided for enforcement in that the department "may, at any time, take any and all legal, administrative, equitable or other action . . . in order to prevent or abate pollution, or should [the defendants] fail to comply with the provisions of this Stipulated Judgment."

The trial court scheduled a hearing on the motion for stipulated judgment for October 5, 1998. At that hearing, Fish Unlimited moved to intervene pursuant to General Statutes § 22a-19 (a),[3] which the trial court granted. As an intervenor, Fish Unlimited adopted Citizens' objections to the stipulated judgment. Specifically, Fish Unlimited claimed that the motion for stipulated judgment was premature, did not address continuing discharges of contaminated wastewater, contravened water control policy, frustrated future enforcement, and assessed inadequate monetary penalties. At the hearing,

---

[3] General Statutes § 22a-19 (a) provides: "In any administrative, licensing or other proceeding, and in any judicial review thereof made available by law, the Attorney General, any political subdivision of the state, any instrumentality or agency of the state or of a political subdivision thereof, any person, partnership, corporation, association, organization or other legal entity may intervene as a party on the filing of a verified pleading asserting that the proceeding or action for judicial review involves conduct which has, or which is reasonably likely to have, the effect of unreasonably polluting, impairing or destroying the public trust in the air, water or other natural resources of the state."

Fish Unlimited unsuccessfully sought the admission of incident reports and proffered the testimony of David Cherico and James Grier. Cherico is a sanitary engineer with the water management bureau of the department. Grier is supervising sanitary engineer in the permits enforcement division of the water bureau of the department. Fish Unlimited moved for a continuance, which the trial court denied. Following the hearing, the trial court granted the motion for stipulated judgment.[4] Fish Unlimited appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 65-1 and General Statutes § 51-199 (c).

I

Fish Unlimited claims that the trial court improperly granted the motion for stipulated judgment because: (1) the stipulation does not promote the public policy underlying Connecticut's Environmental Protection Act, General Statutes § 22a-14 et seq.; (2) the stipulation is a product of bad faith and collusion; and (3) the Mystic Marinelife Aquarium programs are not bona fide research projects within the meaning of General Statutes § 22a-16a (3).[5] We disagree.

[4] Thereafter, Fish Unlimited moved for reargument, which the trial court denied.

[5] General Statutes § 22a-16a provides: "In any action brought by the Attorney General under section 22a-16 or under any provision of this title which provides for a civil or criminal penalty for a violation of such provision, the court, in lieu of any other penalties, damages or costs awarded, or in addition to a reduced penalty, damages or costs awarded, may order the defendant (1) to provide for the restoration of any natural resource or the investigation, remediation or mitigation of any environmental pollution on or at any real property which resource or property are unrelated to such action, (2) to provide for any other project approved by the Commissioner of Environmental Protection for the enhancement of environmental protection or conservation of natural resources, (3) to make a financial contribution to an academic or government-funded research project related to environmental protection or conservation of natural resources, or (4) to make a financial contribution to the Special Contaminated Property Remediation and Insurance Fund established under section 22a-133t provided the total aggregate amount of all contributions to said fund under this section shall not exceed one million

"A stipulated judgment is not a judicial determination of any litigated right. . . . It may be defined as a contract of the parties acknowledged in open court and ordered to be recorded by a court of competent jurisdiction. . . . [It is] the result of a contract and its embodiment in a form which places it and the matters covered by it beyond further controversy. . . . The essence of the judgment is that the parties to the litigation have voluntarily entered into an agreement setting their dispute or disputes at rest and that, upon this agreement, the court has entered judgment conforming to the terms of the agreement. . . . *Gillis* v. *Gillis*, 214 Conn. 336, 339–40, 572 A.2d 323 (1990)." (Internal quotation marks omitted.) *Tureck* v. *George*, 44 Conn. App. 154, 161, 687 A.2d 1309, cert. denied, 240 Conn. 914, 691 A.2d 1080 (1997). "In approving a settlement affecting the public interest . . . a trial court must be satisfied of the fairness of the settlement. *Janus Films, Inc.* v. *Miller*, 801 F.2d 578, 582 (2d Cir. 1986)." (Internal quotation marks omitted.) *Willimantic Car Wash, Inc.* v. *Zoning Board of Appeals*, 247 Conn. 732, 744, 724 A.2d 1108 (1999). As a reviewing court, we consider only whether the trial court abused its discretion in making that determination. See *Camp* v. *Union Mfg. Co.*, 17 Conn. App. 70, 71, 549 A.2d 285 (1988), cert. denied, 210 Conn. 808, 556 A.2d 608 (1989).

A

Fish Unlimited first asserts that the stipulation undermines the specific public policy underlying Connecticut's Environmental Protection Act to eliminate water pollution. See General Statutes § 22a-422.[6] Fish Unlim-

---

dollars per fiscal year. No defendant carrying out any order under this section may claim or represent that its expenses in so doing constitute ordinary business expenses or charitable contributions or any other type of expense other than a penalty for a violation of the environmental laws."

[6] General Statutes § 22a-422 provides: "It is found and declared that the pollution of the waters of the state is inimical to the public health, safety and welfare of the inhabitants of the state, is a public nuisance and is harmful to wildlife, fish and aquatic life and impairs domestic, agricultural,

ited contends that the trial court undermined this public policy and abused its discretion by approving a stipulation that, in its view, is essentially a "sham agreement" the benefits of which devolve solely upon the defendants. Specifically, Fish Unlimited argues that the stipulation does not prevent future violations, does not adequately punish past violations, and allows for "more mischief" through the modification provision of the stipulation.[7] We disagree.

The trial court's findings support the conclusion that the stipulation effectively would promote Connecticut's public policy of eliminating water pollution by providing stiff penalties, by providing for educational funding, by implementing an audit procedure, and by reserving the department's rights to bring an action for a violation. The trial court concluded that "1.2 million [dollars] is a tremendous penalty. There are not very many penalties like that that come out of these courts." In addition, although the stipulation does not specifically address future violations through injunctive remedies, the trial court noted that "the department has reserved its rights to bring an action if there is a violation," as well as requiring an audit procedure. With respect to the provision of the stipulation allowing for the modification of the agreement, the department represented, both in its objection to Fish Unlimited's motion for reargument and at oral argument before this court, that any substan-

industrial, recreational and other legitimate beneficial uses of water, and that the use of public funds and the granting of tax exemptions for the purpose of controlling and eliminating such pollution is a public use and purpose for which public moneys may be expended and tax exemptions granted, and the necessity and public interest for the enactment of this chapter and the elimination of pollution is hereby declared as a matter of legislative determination."

[7] Paragraph eighteen of the stipulation provides: "This agreement may be modified or amended at any time upon mutual agreement of the parties hereto, provided such modification is in writing and duly executed by the parties."

tial modification would be subject to court approval, at which time the intervenors could participate. Moreover, the trial court concluded that in the absence of any evidence to the contrary, there was no reason to believe that the department would abdicate its enforcement role; see General Statutes §§ 22a-5 and 22a-6; or effectively nullify its agreement with the defendants. We conclude that the trial court did not abuse its discretion in determining that this agreement was fair and that it did not undermine Connecticut's environmental policy.

B

Fish Unlimited next asserts that the stipulation is a product of bad faith and collusion. The department and the defendants, on the other hand, contend that Fish Unlimited is limited as an intervenor to raising only environmental issues, and that this claim of Fish Unlimited is procedural, rather than environmental. The department and the defendants also contend that, in any case, Fish Unlimited has presented no evidence to support its assertion. We reject Fish Unlimited's claim.

"Although intervention is allowed [pursuant to § 22a-19], it is strictly limited to the raising of environmental issues. *Mystic Marinelife Aquarium, Inc.* v. *Gill,* 175 Conn. 483, 490, 400 A.2d 726 (1978)." *Connecticut Water Co.* v. *Beausoleil,* 204 Conn. 38, 44–45, 526 A.2d 1329 (1987). We assume, without deciding, that Fish Unlimited's assertions as to the methods by which the defendants and the department reached a settlement raise an environmental issue for purposes of intervention.

Fish Unlimited, however, has pointed to no evidence in the record to support its assertion of bad faith and collusion. Rather than presenting any evidence of bad faith or collusion between the defendants and the department, Fish Unlimited bases its assertions on seemingly innocuous circumstances such as: the slow progress of discovery and pleading; the conclusion of

settlement negotiations shortly after Citizens' intervention; the issuance of press releases regarding the settlement prior to the trial court's approval of the settlement; the modification provision of the stipulation; and the scheduling of a press conference without informing Citizens. Fish Unlimited asks this court to adopt its speculative inferences and substitute them for the contrary findings of the trial court. That is not the function of this court.

"A factual finding may be rejected by this court only if it is clearly erroneous." (Internal quotation marks omitted.) *Kaplan* v. *Kaplan*, 186 Conn. 387, 391–92, 441 A.2d 629 (1982). On questions of fact, the trial court is permitted to weigh credibility and draw reasonable inferences. In the present case, the trial court did precisely that and concluded that there must be "some evidence that there has been an abuse of discretion someplace, that there has been something wrong that has occurred, and I have heard nothing today that [the commissioner] or any other members of the department abused their discretion in some fashion, committed some horrendous act, did something which should preclude me, on its face, from approving this." Our search of the record confirms that there was nothing to suggest bad faith or collusion.

C

Fish Unlimited also asserts that Mystic Marinelife Aquarium is not a bona fide academic or government funded research project of the kind specified under § 22a-16a (3). Fish Unlimited's entire argument on this claim consists of one sentence: "The canon of statutory construction which holds that a statute should not be strained to achieve a bizarre result is applicable in this instance." There is no analysis of the statute, of whether it applies to a settlement agreement, or of any facts or evidence in the record regarding Mystic Marinelife

Aquarium. This is the quintessential example of inadequate briefing of an appellate claim. We therefore decline to address it.

## II

Finally, Fish Unlimited claims that the trial court deprived it of meaningful participation as an environmental intervenor. There is no merit to this claim.

"Although intervention is allowed [pursuant to § 22a-19], it is strictly limited to the raising of environmental issues. *Mystic Marinelife Aquarium, Inc.* v. *Gill*, [supra, 175 Conn. 490]. By permitting such intervention, the act confers standing to private persons to bring actions to protect the environment. *Belford* v. *New Haven*, 170 Conn. 46, 54, 364 A.2d 194 (1975). Such standing, however, is conferred only to protect the natural resources of the state from pollution or destruction." (Internal quotation marks omitted.) *Connecticut Water Co.* v. *Beausoleil*, supra, 204 Conn. 45.

Fish Unlimited did not move to intervene until October 5, 1998, the day of the hearing on the motion for stipulated judgment. Nonetheless, at that hearing, the trial court granted intervenor status to Fish Unlimited. Fish Unlimited participated in the hearing, which lasted approximately four hours and is documented in 140 pages of transcript.[8] In addition, the trial court allowed Fish Unlimited to examine Cherico and Grier to support the admission of various documents, although the testimony was excluded on relevance grounds. Only after the conclusion of this hearing did the trial court approve the stipulated judgment.[9] Under the circumstances, we are not persuaded that Fish Unlimited was denied meaningful participation in the hearing. To the contrary, we

---

[8] The documentary evidence consisted of press releases and incident reports. The trial court excluded these documents on relevance grounds.

[9] Although the trial court denied Fish Unlimited's request for a continuance, Fish Unlimited does not raise that ruling on appeal.

conclude that the trial court permitted extensive and ample opportunity for meaningful participation.

The judgment is affirmed.

In this opinion the other justices concurred.