POND VIEW, LLC *v.* PLANNING AND ZONING
COMMISSION OF THE TOWN OF
MONROE ET AL.
(SC 17878)

Norcott, Katz, Palmer, Vertefeuille and Zarella, Js.

Argued April 23—officially released July 29, 2008

*Frank B. Cochran,* for the appellants (defendant Elizabeth Murphy et al.).

*Christopher J. Smith,* with whom was *Beth Bryan Critton,* for the appellee (plaintiff).

*Frederick J. Martin,* town attorney, for the appellee (named defendant).

*Opinion*

KATZ, J. The defendants Elizabeth Murphy and Sally Lundy, environmental intervenors (intervenors)[1] pursuant to General Statutes § 22a-19 (a),[2] appeal, following the Appellate Court's grant of certification, from the judgment of the trial court sustaining the appeal of the plaintiff, Pond View, LLC, from the decision of the

---

[1] Although we refer to Murphy and Lundy jointly as the intervenors, where necessary, we refer to them individually by name.

[2] General Statutes § 22a-19 (a) provides: "In any administrative, licensing or other proceeding, and in any judicial review thereof made available by law, the Attorney General, any political subdivision of the state, any instrumentality or agency of the state or of a political subdivision thereof, any person, partnership, corporation, association, organization or other legal entity may intervene as a party on the filing of a verified pleading asserting that the proceeding or action for judicial review involves conduct which has, or which is reasonably likely to have, the effect of unreasonably polluting, impairing or destroying the public trust in the air, water or other natural resources of the state."

named defendant, the planning and zoning commission of the town of Monroe (commission), denying the plaintiff's application for a zone change. On appeal to this court,[3] the intervenors contend, inter alia, that, when reviewing the commission's decision, the trial court failed to take into account the effect of a valid protest petition filed with the commission pursuant to General Statutes 8-3 (b).[4] The plaintiff responds that the intervenors lack standing to bring this appeal because they have failed to raise any environmental issues in accordance with § 22a-19 (a).[5] We agree with the plaintiff that the intervenors lack standing, and, therefore, we lack jurisdiction to consider their appeal.

The record reflects the following undisputed facts and procedural history. The plaintiff owns a parcel of land in the town of Monroe (town), approximately one acre of which falls within a DB-2 business and commercial zone, and approximately seventeen acres of which

[3] We transferred the appeal from the Appellate Court to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[4] General Statutes § 8-3 (b) provides: "Such [zoning] regulations and boundaries [for zoning districts] shall be established, changed or repealed only by a majority vote of all the members of the zoning commission, except as otherwise provided in this chapter. In making its decision the commission shall take into consideration the plan of conservation and development, prepared pursuant to section 8-23, and shall state on the record its findings on consistency of the proposed establishment, change or repeal of such regulations and boundaries with such plan. If a protest against a proposed change is filed at or before a hearing with the zoning commission, signed by the owners of twenty per cent or more of the area of the lots included in such proposed change or of the lots within five hundred feet in all directions of the property included in the proposed change, such change shall not be adopted except by a vote of two-thirds of all the members of the commission."

[5] The commission filed an appellate brief and participated in oral argument before this court in support of the position of the intervenors. Because, however, it did not join in the intervenors' petition for certification to appeal from the trial court's judgment or file its own petition for certification, the commission is not an appellant in the appeal to this court and we do not consider its contentions regarding the propriety of the trial court's judgment herein.

fall within a residential zone. The one acre within the business and commercial zone abuts Main Street, which is state highway Route 25, where many of the businesses in the town are clustered. On or about November 16, 2004, relative to a proposed retail development project to build a shopping center, the plaintiff filed a combined application with the commission for: (1) a design district zone change to designate the entire parcel as a DB-1 business and commercial zone; and (2) a special exception permit for approval of the site plan of its shopping center project, as required under the town's zoning regulations.[6]

Notice of the public hearing on the combined application, which was set to begin on December 1, 2004, was published on or about November 19, 2004. Prior to the start of the commission's hearing on the plaintiff's combined application, the intervenors filed a pleading to intervene in the proceedings pursuant to § 22a-19 (a). The intervenors' verified pleading alleged that: (1) the proposed site development plan for the shopping center would destroy forested steep hillside; (2) the proposed roads, loading docks and parking areas associated with the project significantly would impact natural resources, including air, water and other resources; (3) the construction and operation of the project negatively would impact downstream wetland and watercourse resources; (4) the proposed large septic systems in the site plan would pollute downgradient water resources; and (5) the excavation and site work would produce major erosion, sedimentation and pollution

---

[6] Section 117-1100 of the Monroe zoning regulations provides in relevant part: "A DB [Design Business] District shall be established and/or a DB use shall be permitted only in an area where the uses meet the conditions for a special exception permit, as provided in Sections 117-1801 and 117-1802 . . . . Any new building to be constructed or any building not formerly a business shall be required to obtain a special exception permit for business use prior to its use. In addition the use will:

"(1) Have no significant detrimental impact on the environment. . . ."

discharges into the air and water that are beyond the ability of an erosion control system to prevent.

On December 1 and 2, 2004, the commission held hearings on the combined application, at which time the plaintiff presented supporting expert evidence. The intervenors filed a petition in protest of the plaintiff's application pursuant to § 8-3 (b), which was signed by approximately forty individuals who owned property near the plaintiff's property. On March 3, 2005, the commission voted on the application. Susan Scholler, vice chairman of the commission, submitted a written motion setting forth specific reasons to deny the application for a zone change, essentially contending that it represented too great a change from the existing zoning and would have too great an impact on a neighborhood that residents expected to be residential, not commercial.[7] Her motion was not seconded and therefore failed. Commission member John Epifano then moved to grant the application for the zone change, which was seconded, and the commission thereafter voted three to two to grant the plaintiff's application for a zone change. Both Scholler's and Epifano's motions noted that the intervenors had filed a protest petition in accordance with § 8-3 (b). Because § 8-3 (b) requires a two-thirds vote to approve an application when it has been opposed by a valid protest petition, however, the commission deemed the three to two vote insufficient, and

[7] The specific reasons listed in Scholler's motion were: (1) the proposal is inconsistent with the plan for conservation and development; (2) the evidence and the testimony presented by the plaintiff do not make a case for rezoning according to General Statutes § 8-2; (3) the plaintiff had not made a case for rezoning in light of the impacts on the adjoining properties; (4) "the existing character of the land and the degree of development impact to the area is inappropriate for a project of this magnitude"; (5) the establishment of a commercial zone would degrade the values of adjoining residential properties; (6) questions exist regarding the public health and welfare, particularly in the areas of water supply, sewage disposal, traffic management, and levels of activity to adjoining properties; and (7) questions remain as to the impact on outlying local roads.

accordingly "automatically" denied the plaintiff's application for failing to receive the four requisite votes. As a result of its denial of the zone change application, the commission denied as moot the plaintiff's application for a special exception permit for approval of its site development plan.

Pursuant to General Statutes § 8-8, the plaintiff appealed from the commission's decision to the Superior Court. The plaintiff served notice of its appeal on the intervenors and stated in its complaint to the trial court: "[Murphy and Lundy] . . . may, within their discretion, be [i]ntervenors to this appeal as provided by [§] 22a-19 . . . ." The intervenors filed an answer to the plaintiff's complaint in which they "aver[red] that they were properly named as defending parties because they circulated the protest [petition]" and raised a special defense that the "plaintiff has abandoned the plan to construct a shopping center in a residential zone." Thereafter, the intervenors filed their brief on the merits of the appeal, but did not file a motion to be made parties, pursuant to General Statutes § 52-102 (1)[8] and Practice Book § 9-6. Prior to the commencement of oral argument on the merits of the appeal, the plaintiff filed a motion to strike the intervenors' brief on the ground that the intervenors had raised issues that were outside of the scope of those permitted pursuant to § 22a-19.

The trial court held hearings and thereafter issued a memorandum of decision sustaining the plaintiff's appeal from the denial of its application for a zone

---

[8] General Statutes § 52-102 provides: "Upon motion made by any party or nonparty to a civil action, the person named in the party's motion or the nonparty so moving, as the case may be, (1) may be made a party by the court if that person has or claims an interest in the controversy, or any part thereof, adverse to the plaintiff, or (2) shall be made a party by the court if that person is necessary for a complete determination or settlement of any question involved therein; provided no person who is immune from liability shall be made a defendant in the controversy."

change.[9] The trial court concluded that the record did not support the commission's decision to deny the plaintiff's application. The trial court determined, in light of the record, that Scholler's motion setting forth specific reasons to deny the plaintiff's application; see footnote 7 of this opinion; "adequately represent[ed]" the commission's reasons for denying the application. The court concluded, however, that there was no evidence in the record to support these reasons and that the concerns raised by the surrounding landowners, while reasonable, were unsubstantiated.

Specifically, the court concluded that the record supported the view that the zone change satisfied the requirements of *Harris* v. *Zoning Commission*, 259 Conn. 402, 417, 788 A.2d 1239 (2002), in that it was: (1) in accordance with the town's comprehensive plan; and (2) reasonably related to the normal police power purposes enumerated in General Statutes § 8-2. For guidance in applying the town's comprehensive plan, the court looked to the town's zoning regulations and their requirements for commercial zones, and to the town's 2000 plan for conservation and development. The trial court noted that the town's plan for conservation and development revealed an intent to encourage incremental development of businesses and industry to expand tax revenue, particularly along Routes 25 and 111, but that major expansions were disfavored, specifically because of limited access to highways and "lack of public water and/or sewers in certain areas."

In concluding that the plaintiff had proffered sufficient evidence in support of its application, the trial court relied on the following evidence. The town's

[9] We note that the intervenors filed a certification with the Appellate Court indicating that transcripts of the proceedings before the trial court were not necessary to the resolution of their appeal because the plaintiff's aggrievement was not at issue. Thus, the transcripts of the proceedings before the trial court are not part of the record in this appeal.

inland wetlands commission conditionally had approved the proposed development prior to the commission's decision, and the plaintiff had received favorable approval from other town officials and agencies. The plaintiff also had proffered reports, studies and testimony from experts in support of its application for both the zone change and the site plan application that addressed and reported favorably on various concerns relative to the town's comprehensive plan and the impact on adjacent property owners, including environmental concerns. Accordingly, the court concluded that the commission's decision denying the plaintiff's application for a zone change was arbitrary and void. Because the commission had not reached the merits of the plaintiff's application for the special exception permit regarding the site development plan, the court did not consider that issue and remanded the case to the commission to address that application.

In a footnote in its memorandum of decision, the trial court stated that it was denying the plaintiff's motion to strike the intervenors' brief, noting that all but one of the issues raised by the intervenors also had been raised by the commission. The only allegation raised solely by the intervenors was a challenge to the commission's lack of jurisdiction on the basis of the plaintiff's failure to file notice of the zone change ten days in advance of the hearing in violation of § 8-3 (a). The court stated that it nonetheless would consider the § 8-3 (a) argument "[f]or the sake of completeness" and because it implicated the commission's jurisdiction. The court rejected the intervenors' contention regarding § 8-3 (a) as meritless, however, because the statute referred to calendar days and not business days, and therefore the filing of the notice was timely. The trial court did not draw any conclusion as to whether the arguments raised by the intervenors in their brief properly were within the scope of § 22a-19 (a), nor did the

trial court address expressly how the intervenors' protest petition figured into its determinations.

Thereafter, the intervenors filed a motion for reargument with the trial court in which they contended that the trial court had failed to rule on a dispositive issue: whether "a decision to deny [a zone change application], required by § 8-3 (b), may nonetheless be invalidated as arbitrary, capricious or illegal." Over the plaintiff's objection, the court granted the intervenors' motion and held oral argument, but subsequently reaffirmed its earlier decision. Following this decision by the court, the commission did not seek permission to appeal. The intervenors, however, filed a petition for certification to appeal to the Appellate Court pursuant to General Statutes § 8-9, which the plaintiff opposed on the ground that the intervenors did not have standing. The Appellate Court ultimately granted the intervenors' petition for certification.

While the intervenors' petition for certification was pending, the following additional events occurred relevant to this case. After the trial court's decision approving the zone change, the commission, on or about September 21, 2006, voted four to one to approve the plaintiff's application for a special exception permit, which would allow the plaintiff to build the shopping center in accordance with its site plan. On or about December 5, 2006, the intervenors filed an appeal from that decision to the Superior Court. In that appeal, the intervenors, along with two other individuals, Jeffrey Zimnoch and Hannah Zimnoch, alleged in their complaint that Murphy, Jeffrey Zimnoch and Hannah Zimnoch were statutorily aggrieved pursuant to General Statutes § 8-8 (a) because they owned property within 100 feet of the plaintiff's property, and that Lundy was "classically aggrieved by being subjected to dust, noise,

potential loss of her well and other nuisances . . . ."[10]
They also alleged standing under General Statutes §§ 8-3 (b), 22a-16 and 22a-19 (a). In that appeal, the intervenors alleged that the decision of the commission to grant the special permit exception was "arbitrary, illegal, without support and procedurally improper . . . ." That appeal currently is pending before the Superior Court.

In the present appeal before this court, the intervenors raise five claims of impropriety by the trial court. The intervenors first contend that the trial court failed to apply the correct standard of review for the denial of a zone change when a valid protest petition has been filed pursuant to § 8-3 (b). Second, the intervenors contend that, contrary to the trial court's conclusion, the record of the administrative proceedings "overwhelmingly" supports the commission's decision to deny the plaintiff's application for a zone change. Third, they contend that the trial court failed to consider the effect of the protest petition on the commission's decision, and fourth, absent a finding that the protest petition was invalid, the court failed to sustain the decision on that ground. Finally, the intervenors contend that the plaintiff failed to comply with the requirements of § 8-3 (a) because it did not file "the precise boundaries of the area proposed for a change" with the town clerk's office ten business days before the hearing on the application.

The plaintiff responds that the intervenors lack standing to bring this appeal because they have failed to raise any of the environmental issues within the scope of § 22a-19 and because they never made a motion to be made parties. In the event that this court determines

---

[10] Although the intervenors' complaint in the other appeal now pending before the Superior Court avers that Murphy lives within 100 feet of the plaintiff's land, the intervenors have made no similar allegation in this appeal, and have not invoked standing under § 8-8.

that the intervenors do have standing, the plaintiff contends that the trial court reviewed its claim under the appropriate standard of review and properly determined that the commission's decision was arbitrary and capricious. We conclude that the intervenors lack standing.[11]

I

We begin with the plaintiff's contention that this court lacks subject matter jurisdiction because the intervenors have raised only procedural issues and therefore do not have standing to bring this appeal as environmental intervenors pursuant to § 22a-19. Specifically, the plaintiff contends that the zone change itself does not involve "conduct" that may be analyzed for its unreasonable pollution effects on the air, water or other natural resources. Rather, it is the plaintiff's site specific development proposal presented via its application for a special exception permit that involves the actual conduct that ultimately and allegedly could have unreasonable environmental effects. Thus, it contends that the proper forum for these § 22a-19 intervenors is the proceeding relating to the commission's later grant of the special exception permit, the appeal from which currently is pending before the Superior Court. The interve-

---

[11] Because we conclude that the intervenors lack standing to bring this appeal, we need not determine whether the trial court's ruling as to the zone change constitutes a final judgment on the "combined application" in light of the fact that the commission had not yet determined whether to grant the other portion of the application, namely, the special exception permit. See *State* v. *Salmon*, 250 Conn. 147, 162–63, 735 A.2d 333 (1999) (adopting "bright-line test requiring the appellant, in order to establish a right of appellate review pursuant to [General Statutes] § 52-263, to establish in the following sequence that: [1] it was a party to the underlying action; [2] it was aggrieved by the trial court decision; and [3] the appeal is from a final judgment"). While zoning appeals from the Superior Court may proceed only upon a grant of certification by the Appellate Court, they are subject to the same jurisdictional prerequisites as § 52-263 appeals. See *Kaufman* v. *Zoning Commission*, 232 Conn. 122, 129–30 and n.7, 653 A.2d 798 (1995).

nors respond that they have standing to bring their claims under § 22a-19 because concerns related to the preservation of natural resources underlying the town's plan of conservation and development provided a basis for the commission's denial of the proposed zone change and thus bring the issues in this appeal within the scope of that statute. We agree with the plaintiff.

"We begin with some well settled principles regarding standing and its aggrievement component, as recently reaffirmed in *Windels* v. *Environmental Protection Commission*, 284 Conn. 268, 287–89, 933 A.2d 256 (2007). If a party is found to lack standing, the court is without subject matter jurisdiction to determine the cause. . . . A determination regarding a trial court's subject matter jurisdiction is a question of law. When . . . the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record. . . .

"Standing is not a technical rule intended to keep aggrieved parties out of court; nor is it a test of substantive rights. Rather it is a practical concept designed to ensure that courts and parties are not vexed by suits brought to vindicate nonjusticiable interests and that judicial decisions which may affect the rights of others are forged in hot controversy, with each view fairly and vigorously represented. . . . These two objectives are ordinarily held to have been met when a complainant makes a colorable claim of direct injury he has suffered or is likely to suffer, in an individual or representative capacity. Such a personal stake in the outcome of the controversy . . . provides the requisite assurance of concrete adverseness and diligent advocacy. . . . The requirement of directness between the injuries claimed by the plaintiff and the conduct of the defendant also is expressed, in our standing jurisprudence, by the focus

on whether the plaintiff is the proper party to assert the claim at issue. . . .

"Two broad yet distinct categories of aggrievement exist, classical and statutory. . . . Classical aggrievement requires a two part showing. First, a party must demonstrate a specific, personal and legal interest in the subject matter of the [controversy], as opposed to a general interest that all members of the community share. . . . Second, the party must also show that the [alleged conduct] has specially and injuriously affected that specific personal or legal interest. . . .

"Statutory aggrievement exists by legislative fiat, not by judicial analysis of the particular facts of the case. In other words, in cases of statutory aggrievement, particular legislation grants standing to those who claim injury to an interest protected by that legislation." (Internal quotation marks omitted.) *Andross* v. *West Hartford*, 285 Conn. 309, 321–22, 939 A.2d 1146 (2008).

The statute that the intervenors in the present case claim grants them standing, § 22a-19 (a), provides: "In any administrative, licensing or other proceeding, and in any judicial review thereof made available by law, the Attorney General, any political subdivision of the state, any instrumentality or agency of the state or of a political subdivision thereof, any person, partnership, corporation, association, organization or other legal entity may intervene as a party on the filing of a verified pleading asserting that the proceeding or action for judicial review involves *conduct* which has, or which is reasonably likely to have, the effect of unreasonably polluting, impairing or destroying the public trust in the air, water or other natural resources of the state." (Emphasis added.)

On the basis of this expansive language, we previously have concluded that § 22a-19 confers standing on a broad range of individuals, entities and government

agencies to intervene in both administrative proceedings and subsequent "judicial review" thereof on appeal.[12] *AvalonBay Communities, Inc.* v. *Zoning Commission*, 280 Conn. 405, 413–14, 908 A.2d 1033 (2006); *Red Hill Coalition* v. *Town Plan & Zoning Commission*, 212 Conn. 727, 733–34, 563 A.2d 1347 (1989). We also consistently have acknowledged, however, that an intervenor's standing pursuant to § 22a-19 strictly is limited to challenging only environmental issues covered by the statute and "only those environmental concerns that are within the jurisdiction of the particular administrative agency conducting the proceeding into which the party seeks to intervene." *Nizzardo* v. *State Traffic Commission*, 259 Conn. 131, 148, 788 A.2d 1158 (2002); accord *Rocque* v. *Northeast Utilities Service Co.*, 254 Conn. 78, 85, 755 A.2d 196 (2000) (intervention under § 22a-19 "strictly limited to the raising of environmental issues" [internal quotation marks omitted]); *Mystic Marinelife Aquarium, Inc.* v. *Gill*, 175 Conn. 483, 490, 499–500, 400 A.2d 726 (1978) (concluding that intervenor that has filed verified pleading at administrative level pursuant to § 22a-19 has standing to appeal on basis of that pleading "limited to . . . environmental issues only"); *Belford* v. *New Haven*, 170 Conn. 46, 54, 364 A.2d 194 (1975) ("[t]he [Environmental Protection Act of 1971, General Statutes § 22a-14 et seq.] does

---

[12] We previously have concluded that § 22a-19 (a) does not create "the right to appeal from administrative matters that are not otherwise appealable." *Fort Trumbull Conservancy, LLC* v. *Planning & Zoning Commission*, 266 Conn. 338, 361, 832 A.2d 611 (2003). In this regard, we note that §§ 8-8 and 8-9 create the avenues for appeal to the Superior Court and Appellate Court respectively in the present case. Section 22a-19 governs the *scope* of issues that environmental intervenors have standing to raise when availing themselves of such avenues of appeal. Id., 360–61; see also *Branhaven Plaza, LLC* v. *Inland Wetlands Commission*, 251 Conn. 269, 273–76 and n.9, 740 A.2d 847 (1999) (certification to appeal pursuant to § 8-8 to raise issues within scope of § 22a-19 [a]); *Mystic Marinelife Aquarium, Inc.* v. *Gill*, 175 Conn. 483, 490, 400 A.2d 726 (1978) (having become proper party in administrative proceeding, intervenor had statutory standing to appeal for limited purpose of raising environmental issues).

not . . . confer standing upon individuals to challenge legislative decisions of a municipality which do not directly threaten the public trust in the air, water and other natural resources of this state").

In the present case, there can be little doubt that the intervenors are persons who legally may intervene in an administrative proceeding and appeal therefrom under § 22a-19 (a), for the statute grants that power to "any" individual. Nor is there any debate that the intervenors properly filed a pleading with the commission containing the requisite specific allegations that the proposed site development plan would cause certain adverse environmental impacts on the "air, water or other natural resources . . . ." *Red Hill Coalition, Inc.* v. *Town Plan & Zoning Commission,* supra, 212 Conn. 733–34 (§ 22a-19 [a] grants individuals standing to intervene before planning and zoning commissions as matter of right, "once a verified pleading is filed complying with the statute, whether or not those allegations ultimately prove to be unfounded"). The sole question then is whether the issues that the intervenors ask us to decide in the present appeal are those properly within the scope of the statute.

Although they have raised five claims in their brief, the primary issues that emerge on appeal concern the trial court's standard of review, its treatment of the supermajority provision in § 8-3 (b), and its construction of the notice provision in § 8-3 (a). Specifically, the intervenors challenge the trial court's determination that it could review the commission's decision to determine whether the decision was supported by substantial evidence, *despite* their protest petition, which the court did not conclude was invalid. They submit that the proper standard of review is that "denial of a proposal to change the zone of property could be considered arbitrary only if it was counter to law or unsupported by any of the applicable statutory principles of zoning."

It is clear that these issues are not environmental issues traditionally within the scope of § 22a-19. The issues related to § 8-3 raise questions of construction of a zoning statute of general application, and the issue of the standard of review is one of appellate procedure in an administrative appeal. The intervenors have cited no case, and we have found none, in which this court has permitted environmental intervenors to raise purely procedural issues when the only basis for standing that they have alleged is § 22a-19. Although this court never expressly has concluded that standing under § 22a-19 does not include standing to raise any related procedural issues, it is axiomatic that the statute encompasses substantive environmental issues only, and the court repeatedly has declined to consider whether procedural issues are covered.[13] See, e.g., *Rocque* v. *Northeast Utilities Service Co.*, supra, 254 Conn. 80, 85–86 (stating first that § 22a-19 is limited to environmental issues, and declining to decide question of whether fraud and collusion in settlement between state and nuclear power plant over dumping of contaminated wastewater from plant constituted environmental issue because claim was meritless); *Gardiner* v. *Conservation Commission*, 222 Conn. 98, 106–107, 608 A.2d 672 (1992) (declining to consider abstract claim that § 22a-19 permits standing to raise nonenvironmental claims that bear "inextricable nexus" to environmental issues).[14] The cases wherein we have permitted standing

[13] The plaintiff relies on *Connecticut Coalition Against Millstone* v. *Connecticut Siting Council*, 286 Conn. 57, 83–85, 942 A.2d 345 (2008), wherein we dismissed as moot one intevenor's claim that he was aggrieved under the Uniform Administrative Procedure Act, General Statutes § 4-166 et seq., to raise a claim that two siting council members had acted unethically because the trial court had dismissed that ethics claim on the merits after finding aggrievement under § 22a-19. We did not, however, review the trial court's conclusions concerning aggrievement under § 22a-19 and, therefore, that case is not helpful to either the plaintiff or the intervenors.

[14] Even if we were inclined to consider procedural issues that bear a nexus to substantive environmental concerns covered by § 22a-19, such as those related to § 8-3 (a) and (b) in the present case, it is clear to us that no

under § 22a-19 have involved circumstances in which the *conduct* at issue in the application before this court allegedly would cause direct harm to the environment. See, e.g., *Red Hill Coalition, Inc.* v. *Town Plan & Zoning Commission*, supra, 212 Conn. 730–33 (intervention pursuant to § 22a-19 on ground that proposed development of land "would result in the irreversible elimination of major portions of prime agricultural land" was proper but agricultural land ultimately determined not "natural resource" within meaning of statute [internal quotation marks omitted]); *Mystic Marinelife Aquarium, Inc.* v. *Gill*, supra, 175 Conn. 485, 490 (appeal from approval of permit to construct floating dock and other structures along river that would harm environment); see also *Fort Trumbull Conservancy, LLC* v. *New London*, 282 Conn. 791, 805–808, 925 A.2d 293 (2007) (concluding [1] that development plan itself constituted conduct that could cause harm to environment within meaning of § 22a-16, and [2] that allegation of violation of "technical or procedural requirements" does not give rise to claim of unreasonable pollution for purposes of standing under § 22a-16).

To the extent that the intervenors challenge the merits of the trial court's decision—i.e., the propriety of its determination that all of the evidence supported the plaintiff's position that the development resulting from the proposed zone change would be consistent with the town's comprehensive development plan—that challenge relates to the *special exception permit* application that is the subject of the appeal currently pending before the Superior Court. In other words, any environmental harm to the "air, water or other natural

significant nexus exists between those issues and the environmental claims pleaded in the intervenors' verified complaint. Moreover, we fail to see how any of the procedural issues that the intervenors raise in the present case have prevented them from raising the environmental claims that they are permitted to raise under § 22a-19.

resources of the state" necessarily would result from the plaintiff's conduct in actually developing the property, not from the zone change at issue in this appeal. Indeed, it is evident from the allegations in the intervenors' complaint that the alleged environmental harms all stem from the site plan application for the construction of the shopping center. Therefore, to the extent that the intervenors want to challenge the environmental impacts of the construction of the shopping center and related procedural issues that are within the commission's jurisdiction to consider, the proper forum for such challenges is their appeal from the commission's decision granting the plaintiff's special exception permit or, more specifically, approving the site plan. It is this application that actually involves the "conduct" by the plaintiff—i.e., the construction of a shopping center—that might lead to adverse environmental impacts that standing pursuant to § 22a-19 is meant to guard against.

## II

The intervenors also claim to have standing by virtue of having filed the protest petition in accordance with § 8-3 (b), which, they contend, created a personal and legal interest in, and made them "indispensable" parties to, the present action. We disagree.

That statute provides in relevant part: "If a protest against a proposed change is filed at or before a hearing with the zoning commission, signed by the owners of twenty percent or more of the area of the lots included in such proposed change or of the lots within five hundred feet in all directions of the property included in the proposed change, such change shall not be adopted except by a vote of two-thirds of all the members of the commission. . . ." General Statutes § 8-3 (b). As the text clearly indicates, the filing of a valid protest petition permits a planning and zoning commission to

approve an application for a zone change only by a supermajority. Thus, the only interest of the intervenors that the statute protected was their right to force a supermajority vote on the zone change. See *Blaker* v. *Planning & Zoning Commission*, 212 Conn. 471, 475–76, 562 A.2d 1093 (1989) (reviewing plaintiff's appeal from zoning commission's decision granting applicant's zone change on basis that commission approved zoning application by less than supermajority despite plaintiff's § 8-3 [b] protest petition), on appeal after remand, 219 Conn. 139, 592 A.2d 155 (1991). In the present case, the commission complied with the provisions of § 8-3 (b) when it automatically denied the application because a supermajority had not voted in favor of it. The trial court, however, concluded that the decision of some members to deny the application was not supported by substantial evidence, and therefore, in essence, determined that a supermajority *should* have voted to grant the application. None of these actions caused damage to any interest that the intervenors may have had under the statute to have a supermajority approve the zone change, and thus they are not aggrieved.[15] See *AvalonBay Communities, Inc.* v. *Orange*, 256 Conn. 557, 568, 775 A.2d 284 (2001) ("The fundamental test for determining aggrievement encompasses a well-settled twofold determination: first, the party claiming aggrievement must successfully demonstrate a specific, personal and legal interest in [the subject matter of the challenged action], as distinguished from a general interest, such as is the concern of all members of the

---

[15] Indeed, if we were to conclude that § 8-3 (b) afforded standing to appeal under these circumstances, such a construction would undermine § 8-8 (a) (1), which authorizes aggrieved persons to appeal and which defines an "aggrieved person" as a person living within "one hundred feet of any portion of the land involved in the decision of the board." Because a § 8-3 (b) petition may be signed by persons owning property within *five* hundred feet of a proposed change, the plaintiff's proposed construction would permit property owners that do not satisfy statutory aggrievement under § 8-8, which is intended to govern all zoning appeals, to appeal nonetheless.

community as a whole. Second, the party claiming aggrievement must successfully establish that this specific personal and legal interest has been specially and injuriously affected by the [challenged action]." [Internal quotation marks omitted.]).[16]

Because the intervenors have not alleged and proved any basis other than § 22a-19 (a) for standing in this action, we are without jurisdiction to hear their appeal. Accordingly, we do not reach the merits of their claims.

The appeal is dismissed.

In this opinion the other justices concurred.

---

[16] We disagree with any contention by the intervenors that they were named in the plaintiff's complaint to the trial court as necessary defendants or as anything other than § 22a-19 intervenors. In addition, as we already have indicated, the environmental issues related to the special exception permit application were the only legal interests at stake for the intervenors in the appeal from the commission's decision. As the previous discussion herein should make clear, that interest is not sufficiently implicated in the present appeal. See also Fox v. Zoning Board of Appeals, 84 Conn. App. 628, 637, 854 A.2d 806 (2004) ("[i]t is well established that [m]ere status as a party or a participant in the proceedings below does not in and of itself constitute aggrievement for the purposes of appellate review" [internal quotation marks omitted]).