# JEFFREY ZIMNOCH ET AL. *v.* PLANNING AND ZONING COMMISSION OF THE TOWN OF MONROE ET AL.
## (SC 18511)

Rogers, C. J., and Norcott, Palmer, Zarella, McLachlan, Eveleigh and Harper, Js.

Argued April 19—officially released November 1, 2011

*Christopher J. Smith*, with whom were *Amber N. Sarno*, and, on the brief, *Beth Bryan Critton*, for the appellant (defendant Pond View, LLC).

*Frank B. Cochran*, for the appellees (plaintiffs).

*Opinion*

ZARELLA, J. The defendant Pond View, LLC,[1] appeals from the judgment of the trial court sustaining the appeal of the plaintiffs, Jeffrey Zimnoch, Hannah Zimnoch, Elizabeth Murphy and Sally Lundy, from the decision of the named defendant, the planning and zoning commission of the town of Monroe (commission), approving the defendant's application for a special exception permit. On appeal to this court,[2] the defendant contends, first, that the decision of the trial court, *Tobin, J.*, in sustaining the plaintiffs' appeal, improperly revisited and reversed a prior judgment of the court, *Hon. Howard T. Owens*, judge trial referee, which had approved the defendant's application for a zone change. The defendant claims that the appeal was sustained in contravention of the doctrines of finality of judgments, res judicata, collateral estoppel, and exhaustion of administrative remedies. Second, the defendant claims that, even assuming that the trial court could revisit the merits of Judge Owens' decision approving the defendant's zone change application, the trial court's judgment nevertheless should be reversed because Judge Owens, contrary to the trial court's determination, had authority under the plain language of General

---

[1] The named, and only other, defendant in this case, the planning and zoning commission of the town of Monroe, did not join in the appeal from the trial court's judgment. Accordingly, we refer herein to Pond View, LLC, as the defendant unless otherwise indicated.

[2] The defendant appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

Statutes § 8-8 (*l*)[3] to reverse the commission's denial, and to approve the defendant's zone change application on the basis of substantial evidence in the record. Finally, the defendant argues that, even assuming that the trial court correctly concluded that Judge Owens did not have authority under § 8-8 (*l*) to approve the zone change application, the trial court's judgment should be reversed because the commission's failure to perform the ministerial act of approving and enacting the zone change pursuant to the remedy set forth in Judge Owens' judgment is not a basis for voiding the commission's approval of the special exception permit application.[4] We agree with the defendant that the trial court improperly revisited the prior opinion of Judge Owens, and, therefore, we reverse the judgment of the trial court and remand the case to that court for further proceedings.

I

A

The defendant's efforts to obtain a zone change and special exception permit for this property were the subject of a previous appeal regarding the commission's denial of the zone change. See *Pond View, LLC* v. *Plan-*

---

[3] General Statutes § 8-8 (*l*) provides in relevant part: "The court, after a hearing thereon, may reverse or affirm, wholly or partly, or may modify or revise the decision appealed from. If a particular [commission] action is required by law, the court, on sustaining the appeal, may render a judgment that modifies the [commission] decision or orders the particular [commission] action. . . ."

[4] We note that the defendant's third argument differs from its third certified issue on appeal. In its certified issue, the defendant seeks to determine whether the trial court's decision inappropriately alters the operation of the town's zoning process. Specifically, the defendant questions whether the decision, if upheld, would have the effect of undermining a valid zoning procedure used in the town and other municipalities throughout Connecticut. Because we decide this appeal principally on the first issue raised by the defendant, we do not reach this third issue. Further, to the extent that the defendant's third argument is relevant to our analysis, we find that it falls within the scope of its first certified issue.

*ning & Zoning Commission,* 288 Conn. 143, 953 A.2d 1 (2008). In that opinion, we found the following relevant facts. The defendant "owns a parcel of land in the town of Monroe (town), approximately one acre of which falls within a DB-2 business and commercial zone, and approximately seventeen acres of which fall within a residential zone. . . . On or about November 16, 2004, relative to a proposed retail development project to build a shopping center, the [defendant] filed a combined application with the commission for: (1) a design district zone change to designate the entire parcel as a DB-1 business and commercial zone; and (2) a special exception permit for approval of the site plan of its shopping center project, as required under the town's zoning regulations.[5]

"Notice of the public hearing on the combined application, which was set to begin on December 1, 2004, was published on or about November 19, 2004. Prior to the start of the commission's hearing on the [defendant's] combined application, [two of the plaintiffs in the present case, Lundy and Murphy (intervenors)] filed a pleading to intervene in the proceedings pursuant to [General Statutes] § 22a-19 (a)[6] [alleging various detrimental environmental effects that would follow from the approval of the defendant's combined application]. . . .

---

[5] The town zoning regulations require applications for the zone change and the related special exception permit to be submitted together for review by the commission.

[6] General Statutes § 22a-19 (a) provides: "In any administrative, licensing or other proceeding, and in any judicial review thereof made available by law, the Attorney General, any political subdivision of the state, any instrumentality or agency of the state or of a political subdivision thereof, any person, partnership, corporation, association, organization or other legal entity may intervene as a party on the filing of a verified pleading asserting that the proceeding or action for judicial review involves conduct which has, or which is reasonably likely to have, the effect of unreasonably polluting, impairing or destroying the public trust in the air, water or other natural resources of the state."

"On December 1 and 2, 2004, the commission held hearings on the combined application, at which time the [defendant] presented supporting expert evidence. The intervenors filed a petition in protest of the [defendant's] application pursuant to [General Statutes] § 8-3 (b), which was signed by approximately forty individuals who owned property near the [defendant's] property. On March 3, 2005, the commission voted on the application . . . three to two to grant the [defendant's] application for a zone change. [The commission] noted that the intervenors had filed a protest petition in accordance with § 8-3 (b). Because § 8-3 (b) requires a two-thirds vote to approve an application when it has been opposed by a valid protest petition, however, the commission deemed the three to two vote insufficient, and accordingly automatically denied the [defendant's] application for failing to receive the four requisite votes. As a result of its denial of the zone change application, the commission denied as moot the [defendant's] application for a special exception permit for approval of its site development plan.

"Pursuant to . . . § 8-8, the [defendant] appealed from the commission's decision to the Superior Court. The [defendant] served notice of its appeal on the intervenors and stated in its complaint to the trial court: [Murphy and Lundy] . . . may, within their discretion, be [i]ntervenors to this appeal as provided by [§] 22a-19 . . . .

"The trial court [Judge Owens] held hearings and thereafter issued a memorandum of decision sustaining the [defendant's] appeal from the denial of its application for a zone change. The trial court concluded . . . that there was no evidence in the record to support [the commission's reasons to deny the application] and that the concerns raised by the surrounding landowners, while reasonable, were unsubstantiated. . . .

"Accordingly, the court concluded that the commission's decision denying the [defendant's] application for a zone change was arbitrary and void. Because the commission had not reached the merits of the [defendant's] application for the special exception permit regarding the site development plan, the court did not consider that issue and remanded the case to the commission to address that application.[7] . . .

"Following this decision by the court, the commission did not seek permission to appeal. The intervenors, however, filed a petition for certification to appeal to the Appellate Court pursuant to General Statutes § 8-9, which the [defendant] opposed on the ground that the intervenors did not have standing. The Appellate Court ultimately granted the intervenors' petition for certification." (Citations omitted; internal quotation marks omitted.) Id., 146–52. This court thereafter transferred the appeal to itself pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

On appeal to this court, the defendant maintained its principal argument that the intervenors lacked standing to bring the appeal because they failed to raise any of the issues within the scope of § 22a-19 and because they never filed a motion to be made parties. We agreed with the defendant that the intervenors lacked standing under § 22a-19 to challenge the application for zone change. Id., 154. Although we noted that § 22a-19 "confers standing on a broad range of individuals, entities and government agencies to intervene in both adminis-

[7] Judge Owens did entertain a motion for reargument filed by the intervenors, "in which they contended that the trial court had failed to rule on a dispositive issue: whether 'a decision to deny [a zone change application], required by § 8-3 (b), may nonetheless be invalidated as arbitrary, capricious, or illegal.' Over [the defendant's] objection, the court granted the intervenors' motion and held oral argument, but subsequently reaffirmed its earlier decision." *Pond View, LLC* v. *Planning & Zoning Commission*, supra, 288 Conn. 152.

trative proceedings and subsequent 'judicial review' thereof on appeal"; id., 156–57; we concluded that none of "the issues that the intervenors [had asked] us to decide in the present appeal are those properly within the scope of the statute." Id., 158. Rather, to the extent that the intervenors challenged the merits of the trial court's decision, "that challenge relates to the *special exception permit* application . . . [because] any environmental harm . . . necessarily would result from [the defendant's] conduct in actually developing the property, not from the zone change at issue in this appeal." (Emphasis in original.) Id., 160–61. Simply put, the action on the zone change application did not constitute "conduct" within the scope of § 22a-19, and therefore the intervenors lacked standing to challenge the application on appeal. Id.

B

During the pendency of the defendant's zone change appeal, the following additional events occurred relevant to this case. Upon receipt of Judge Owens' decision, the commission reconvened its consideration of the special exception application. At this point, the commission appears to have proceeded as it would in any other usual circumstance in which it had voted first to approve a zone change application in connection with a design district: by examining the record and testimony available to it from the initial application filing, and from the original hearings on December 1 and 2, 2004. After holding at least two meetings in which the defendant's special exception permit application was discussed, "the commission, on or about September 21, 2006, voted four to one to approve [the defendant's] application for a special exception permit, which would allow [the defendant] to build the shopping center in accordance with its site plan." Id., 152. On or about October 5, 2006, fourteen calendar days after its vote, the commission published notice of its decision in the

Connecticut Post and mailed a letter to the defendant informing the defendant of its decision to approve the special exception permit. The commission took no vote or other official action regarding the zone change application subsequent to Judge Owens' decision.

The special exception permit contained multiple findings and conditions, three of which are relevant to this appeal. First, the permit referenced Judge Owens' decision sustaining the defendant's appeal from the commission's decision in the zone change application, finding that the effect of that decision was to place the defendant's property into the DB-1 zone. Second, the permit contained a condition stating that, should Judge Owens' decision be reversed on appeal—which was still pending at the time of issuance of the special exception permit—the permit would be null and void. Third, the permit contained a condition that should the permit "be the subject of an appeal to the courts at any level, no time limit specified herein shall begin to run until such litigation is fully concluded . . . ."

"On or about December 5, 2006, [the plaintiffs, comprising the intervenors of the previous appeal in *Pond View, LLC*, joined by Jeffrey Zimnoch and Hannah Zimnoch] filed an appeal from that decision to the Superior Court. In that appeal, the [plaintiffs] . . . alleged in their complaint that Murphy, Jeffrey Zimnoch and Hannah Zimnoch were statutorily aggrieved pursuant to . . . § 8-8 (a) because they owned property within 100 feet of the [defendant's] property, and that Lundy was 'classically aggrieved by being subjected to dust, noise, potential loss of her well and other nuisances . . . .' They also alleged standing under General Statutes §§ 8-3 (b), 22a-16 and 22a-19 (a)." *Pond View, LLC* v. *Planning & Zoning Commission*, supra, 288 Conn. 152–53.

In the appeal to the Superior Court, the plaintiffs alleged that the commission had acted improperly, both

procedurally and substantively, when it approved the defendant's special exception permit. After holding hearings and receiving the parties' briefs, the trial court, *Tobin, J.*, framed the issues as follows: "First, [the plaintiffs] claim that the re-zoning of [the defendant's] property has not yet taken place and that until the re-zone has occurred, the commission could not, consistent with its zoning regulations, grant a special exception permit application for property that was still zoned for residential use only. Second, the plaintiffs claim that the commission could not rely solely on the record of the hearings held on December 1 and 2, 2004, in considering the special exception permit application. They urge that the commission was required to hold a new public hearing before granting a special exception permit to [the defendant]." The court stated that if "the answer to [the first question] is negative, then [the defendant's] property remains in the RD [residential and farming district] zone, a zone which does not provide for the issuance of special exception permits for retail uses. In that event, the court would not reach the question of whether the commission was entitled to rely on a nearly two year old record in approving [the defendant's] special exception permit application."

The court began by reviewing the zone change appeal from the earlier trial court decision. In that decision, the trial court noted, Judge Owens had "ordered that '[the defendant's] application for a zone change is sustained and the application for the special exception permit is remanded to the [commission] for further consideration.' The record establishes that, thereafter, the commission took no action to place [the defendant's] property in the DB-1 zone." The trial court found that "resolution of the issues raised on this appeal requires the court to determine whether a change in zoning of [the defendant's] property has, in fact, been implemented. The process of making that determination does not require the court to revisit issues

addressed by Judge Owens. The question to be answered is—'Have the necessary steps been taken to place the [defendant's] property in the DB-1 zone?' The court answers that question in the negative."

In reaching this conclusion, the trial court analyzed the actions of the commission as well as the previous appeal from the commission to Judge Owens. The court noted that in the decision, Judge Owens "did no more than sustain [the defendant's] appeal." Next, the trial court accepted "[the defendant's] assertion that Judge Owens' decision concerning the zone change application is a final judgment [and accordingly] the correctness of that decision will not be addressed by this court," and that, "in sustaining [the defendant's] appeal of the commission's decision to deny the zone change, Judge Owens' decision has concluded the parties' rights with respect to the subject of that appeal and it would be improper to relitigate those issues in this appeal."

The trial court continued, however, that "in considering the current appeal, the court must, of necessity, consider the actions of the commission following Judge Owens' decision. Although Judge Owens sustained [the defendant's] appeal regarding the zone change application, he did not expressly order the commission to take any particular action. Apparently, the commission construed the decision as having, ipso facto, enacted the actual zone change. . . . Notwithstanding the commission's interpretation of Judge Owens' decision, the Superior Court does not have the power to directly change the zone of any property in any municipality in this state."[8]

---

[8] The court turned to the statute under which the defendant filed its appeal to the Superior Court from the commission's denial of the zone change application, § 8-8 (*l*). See footnote 3 of this opinion. The court reasoned that under the language of this statute, Judge Owens did not have the authority to "enact" a zone change, but could only order the commission to do so. As stated elsewhere in this opinion, while we agree that Judge Owens could not enact a zone change himself, we also conclude that Judge Owens undertook no such action.

Further, "[b]y failing to publish a notice of a change of zone, the [c]ommission failed to comply with the statutory requirements of . . . § 8-3 (d) [that] the Supreme Court held mandatory in *Wilson* v. *Planning & Zoning Commission*, [260 Conn. 399, 796 A.2d 1187 (2002)]." Therefore, "the commission has not yet taken the steps necessary to implement the zone change contemplated by Judge Owens' decision." Simply put, because the court found that no zone change had been enacted prior to the issuance of the special exception permit, the permit was incompatible with the current zoning classification. In so concluding, the court stated that, "[h]aving made the foregoing finding, the court does not reach any issues regarding the commission's consideration of [the defendant's] special exception permit application."

Following the decision of the trial court, *Tobin, J.*, the defendant filed a petition for certification to appeal, which was granted by the Appellate Court on June 3, 2009. In the present appeal, the defendant raises three issues, only the first of which is necessary to address in disposing of this appeal. The defendant contends that the trial court improperly revisited and overruled the prior decision by Judge Owens, thus violating the doctrines and principles of finality of judgment, res judicata, collateral estoppel, and exhaustion of administrative remedies. The plaintiffs respond that the trial court correctly interpreted the effect of Judge Owens' decision, and of the resulting actions the commission took to implement that decision and approve the special exception permit. Further, the plaintiffs contend that, because of the nature of the zone change and special exception permit process used in the town, there has been no final zone change relevant to the

defendant's argument that the principles of res judicata, collateral estoppel or law of the case apply to Judge Owens' decision.[9] We conclude that the trial court improperly revisited Judge Owens' decision and incorrectly interpreted the intent and effect of the commission's action in approving the defendant's special exception permit application.

II

We first set forth the applicable standard of review. The issues raised by the defendant in this case turn on the correctness of the trial court's analysis of the legal effect of Judge Owens' decision and the actions taken by the commission following that decision. This analysis entails the construction of the relevant regulations and statutes, and is therefore a matter of law over which we exercise plenary review of the trial court's decision. *Tayco Corp.* v. *Planning & Zoning Commission*, 294 Conn. 673, 679, 986 A.2d 290 (2010). "The process of statutory interpretation involves the determination of the meaning of the statutory language as applied to the facts of the case, including the question of whether the

---

[9] The plaintiffs also respond by arguing that the defendant raises no substantial question in its appeal. It is unclear to us whether, through this argument, the plaintiffs are attacking the merits of the defendant's appeal generally, or the jurisdiction of this court to hear the appeal. To the extent that the plaintiffs' argument goes to the merits of the defendant's appeal, we find this to fall within the plaintiffs' other arguments. To the extent, however, that the plaintiffs are seeking to question the jurisdiction of this court to hear claims based upon justiciability doctrines, we note that, prior to the transfer of the appeal to this court, the plaintiffs moved to dismiss the appeal before the Appellate Court on similar grounds. By an order dated September 23, 2009, the Appellate Court dismissed without prejudice the plaintiffs' motion. We agree with the Appellate Court and therefore conclude that, to the extent the plaintiffs raise an issue of the justiciability of the defendant's appeal before this court premised on the idea that the defendant is seeking an "advisory opinion," the argument is without merit.

language does so apply."[10] (Internal quotation marks omitted.) Id. Additionally, "zoning regulations are local legislative enactments . . . and, therefore, their interpretation is governed by the same principles that apply to the construction of statutes. . . . [R]egulations must be interpreted in accordance with the principle that a reasonable and rational result was intended . . . and the words employed therein are to be given their commonly approved meaning." (Internal quotation marks omitted.) *Rapoport* v. *Zoning Board of Appeals*, 301 Conn. 22, 34, 19 A.3d 622 (2011). Finally, where "as here, [the plaintiffs'] appeal to the trial court is based solely on the record, the scope of the trial court's review of the [commission's] decision and the scope of our review of that decision are the same." (Internal quotation marks omitted.) Id.

Before proceeding to the defendant's claims on appeal, we review the governing legal principles found in the relevant statutory provisions and the town's zoning regulations. As noted in part I A of this opinion, the town has enacted zoning regulations that allow a landowner to petition the commission to have the subject property designated one of several "design districts," including the "design business district"

---

[10] We note further, to the extent relevant in the present case: "When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . The test to determine ambiguity is whether the statute, when read in context, is susceptible to more than one reasonable interpretation." (Internal quotation marks omitted.) *Tayco Corp.* v. *Planning & Zoning Commission*, supra, 294 Conn. 679.

designation sought by the defendant for its parcel of land.[11] In order for a landowner's petition to be considered, the landowner must apply simultaneously for the zone change and for the corresponding special exception permit relating to the underlying proposed development.[12] In other words, the initial change of land from a nondesign district designation to one of the design district designations, with the accompanying change in allowed uses, can occur only if the commission approves both the change of zone and a project currently contemplated for that new zone; a landowner cannot simply petition the commission to change property to a design district without also having a proposed development plan.

Once a landowner submits complete applications for both the zone change and special exception permit, a

---

[11] Section 117-900 of the Monroe zoning regulations, pertaining to all design district zones, provides in relevant part: "The owner or owners of a tract of land may petition for the establishment of a design district (D) only, coincidentally with an application for special exception permit and development proposal which shall be proposed and developed in conformance with these regulations. . . . *In [d]esign [d]istricts, the existing use of land shall not be changed . . . until a site plan of development shall have been prepared by the owner of such land, and approved by the [c]ommission, and a [s]pecial [e]xception shall have been granted . . . .*" (Emphasis added.)

Section 117-1100 of the Monroe zoning regulations, pertaining to design business districts (DB), provides in relevant part: "The general requirements of [a]rticle IX, [d]esign [d]istricts, shall apply to a DB [d]istrict . . . [and a] DB [d]istrict shall be established and/or a DB use shall be permitted only in an area where the uses meet the conditions for a special exception permit . . . ."

[12] Section 117-905 (A) of the Monroe zoning regulations, also pertaining to all design district zones, provides in relevant part: "An application for a change of zoning classification to a design district shall be submitted in complete form . . . . The [c]ommission shall hold a public hearing on the proposed change of zone *and* special exception application, as required by the General Statutes." (Emphasis added.)

Section 117-907 (A) of the Monroe zoning regulations, also pertaining to all design district zones, provides in relevant part: "A change of zone to a design district *shall not become effective until* the required special exception shall have been approved by the [c]ommission . . . ." (Emphasis added.)

public hearing on the combined application is scheduled. After the hearing, the commission votes on both the zone change application and the special exception permit, pursuant to town regulations and to the relevant state statutes. See footnotes 11 and 12 of this opinion; see also General Statutes § 8-3 (a)[13] (public hearing required for zone change); General Statutes § 8-3 (b)[14] (majority commission vote required to effect zone change); General Statutes § 8-3c (b)[15] (public hearing and commission vote required for special permit appli-

---

[13] General Statutes § 8-3 (a) provides in relevant part: "Such zoning commission shall provide for the manner in which . . . the boundaries of zoning districts shall be respectively established or changed. No such . . . boundary shall become effective or be established or changed until after a public hearing in relation there to, held by a majority of the members of the zoning commission . . . ."

[14] General Statutes § 8-3 (b) provides in relevant part: "Such regulations and boundaries [of zoning districts] shall be established, changed or repealed only by a majority vote of all the members of the zoning commission, except as otherwise provided in this chapter. . . . If a protest against a proposed change is filed at or before a hearing with the zoning commission, signed by the owners of twenty per cent or more of the area of the lots included in such proposed change or of the lots within five hundred feet in all directions of the property included in the proposed change, such change shall not be adopted except by a vote of two-thirds of all the members of the commission."

[15] General Statutes § 8-3c (b) provides in relevant part: "The zoning commission or combined planning and zoning commission of any municipality shall hold a public hearing on an application or request for a special permit or special exception . . . . Whenever a commission grants or denies a special permit or special exception, it shall state upon its records the reason for its decision. Notice of the decision of the commission shall be published in a newspaper having a substantial circulation in the municipality and addressed by certified mail to the person who requested or applied for a special permit or special exception . . . within fifteen days after such decision has been rendered. In any case in which such notice is not published within such fifteen-day period, the person who requested or applied for such special permit or special exception may provide for the publication of such notice within ten days thereafter. Such permit or exception shall become effective upon the filing of a copy thereof (1) in the office of the town, city or borough clerk . . . and (2) in the land records of the town in which the affected premises are located, in accordance with the provisions of section 8-3d."

cations). If the commission votes to approve the zone change, it would then move to consider the special permit application; however, a vote denying the zone change application would render the decision on the special permit application moot, as the use envisioned in the special permit application would only have been permissible after the zone change. This second scenario occurred in the facts underlying the present case.

When the commission does approve a combined zone change and special permit application, statutory provisions require additional steps to be taken in order for the commission's decision to be valid. First, for the zone change, § 8-3 (d) requires the commission to set an effective date of the zone change as well as to publish notice of the change prior to the effective date.[16] Second, for the issuance of a special permit, § 8-3c (b) requires the commission to publish notice and inform the applicant "within fifteen days after such decision has been rendered." Section 8-3c (b) further provides that "[i]n any case in which such notice is not published within such fifteen-day period, the person who requested or applied for such special permit or special exception may provide for the publication of such notice within ten days thereafter." See also R. Fuller, 9 Connecticut Practice Series: Land Use Law and Practice (3d Ed. 2007) § 24:3, p. 722. Finally, § 8-3d provides that an approved special exception permit will not be effective until the recipient of the permit records a copy of the

---

[16] General Statutes § 8-3 (d) provides in relevant part: "Zoning regulations or boundaries or changes therein shall become effective at such time as is fixed by the zoning commission . . . and notice of the decision of such commission shall have been published in a newspaper having a substantial circulation in the municipality before such effective date. In any case in which such notice is not published within the fifteen-day period after a decision has been rendered, any applicant or petitioner may provide for the publication of such notice within ten days thereafter." See also R. Fuller, 9 Connecticut Practice Series: Land Use Law and Practice (3d Ed. 2007) § 24:2, p. 720.

permit in the land records of the town in which the landowner's parcel is located.[17] See also 9 R. Fuller, supra, § 24:7, p. 726.

We note further some additional issues germane to understanding the process followed by the commission. First, although the considerations and actions taken by the commission in reviewing the zone change application are slightly different in operation when compared to the special exception permit application,[18] we have uncovered no requirement, statutory, regulatory or otherwise, that precludes the town from combining these applications into one process. Indeed, the use of combined hearings for related zoning and permitting manners was expressly approved of by this court in *Norris* v. *Planning & Zoning Commission*, 156 Conn. 592, 596–97, 244 A.2d 378 (1968).

Second, we note that this particular town's regulations have previously been upheld by the Appellate Court in *Michel* v. *Planning & Zoning Commission*, 28 Conn. App. 314, 612 A.2d 778, cert. denied, 223 Conn. 923, 614 A.2d 824 (1992). In that case, the plaintiffs

---

[17] General Statutes § 8-3d provides in relevant part: "No . . . special exception granted pursuant to this chapter . . . shall be effective until a copy thereof, certified by a zoning commission, planning commission, combined planning and zoning commission or zoning board of appeals . . . is recorded in the land records of the town in which such premises are located. . . ."

Although somewhat unclear from the town zoning regulations, it appears that at some point the town zoning map also is amended to reflect the zone change. See Monroe Zoning Regs., § 117-101.

[18] In particular, a "zoning change . . . [is considered a decision] of the [commission] acting in its legislative capacity." *Konigsberg* v. *Board of Aldermen*, 283 Conn. 553, 581, 930 A.2d 1 (2007); see also 9A R. Fuller, supra, § 33:2, p. 233 ("[a] zoning commission, when amending zoning regulations or passing a zone change, acts in a legislative capacity"). This is in contrast to "a special permit, or special exception, the granting of which is an administrative function" of the commission. *Heithaus* v. *Planning & Zoning Commission*, 258 Conn. 205, 215, 779 A.2d 750 (2001); see also 9A R. Fuller, supra, § 33:3, p. 240 ("[w]here a special permit [or special exception] is involved, the action is administrative in nature").

appealed from a decision of the commission granting the landowner's request for a change of zone to a specified design district and the accompanying approval of the necessary special exception permit. One of the plaintiffs' specific claims was the alleged improper procedure followed by the commission in combining the landowner's applications and holding one hearing. Id., 325. The Appellate Court wholly rejected the plaintiffs' argument, relying in part on *Norris*, and stating: "After the vote rejecting the motion to deny the change of zone, the commission voted to approve 'the application for zone change and special exception permit . . . .' Because the change of zone had already been approved, however [as a rejection of a motion to deny a zone change is the equivalent of approving the zone change], the practical effect of this vote was to grant only the application for the special exception permit. Because the commission held separate votes on the application for a special exception permit and application for a change of zone, the plaintiffs cannot prevail on this claim." Id., 326. To the extent relevant to deciding the issue in the present case, we find the reasoning of the Appellate Court persuasive in its approval of the town zoning regulations and commission's procedures in acting on zone change and special exception permit applications for design districts. Indeed, as we explained in *Norris*, combining zone and permit applications helps expedite the process and ensures that a commission makes the most informed decision possible.

### III

With this background, we now turn to the defendant's principal claim on appeal. Specifically, the defendant argues that the decision of the trial court improperly revisited and reversed Judge Owens' decision in the defendant's previous appeal from the commission. The defendant asserts essentially that the plaintiffs' appeal and Judge Tobin's subsequent decision constitute an

impermissible collateral attack on Judge Owens' earlier decision that sustained the defendant's appeal from the denial of its application for a zone change. The defendant premises its claim on the idea that Judge Owens, through his memorandum of decision dated July 17, 2006, enacted and effected the change of zone sought by the defendant. Although we agree with the defendant's argument that the decision of the trial court represented an impermissible collateral attack on Judge Owens' prior decision, we do not agree with the defendant's underlying claim that Judge Owens enacted the zone change.

We conclude that the effect of the trial court's decision was to undermine, to the point of essentially reversing, Judge Owens' previous opinion that sustained the defendant's appeal from the denial of its application for a zone change. We begin by exploring the meaning and effect of Judge Owens' decision to the extent it is relevant in this appeal.

Judge Owens' decision with respect to the defendant's application for a zone change was a final decision on the zone change application.[19] This is the conclusion we reached in *Finley* v. *Inland Wetlands Commission,* 289 Conn. 12, 959 A.2d 569 (2008). In that case, we explained: "After explicitly resolving all [of] the issues in favor of the plaintiff . . . the trial court remanded

[19] The plaintiffs argue that in our prior related opinion, *Pond View, LLC* v. *Planning & Zoning Commission,* supra, 288 Conn. 143, we held that Judge Owens' decision was not a final judgment. Thus, Judge Tobin could properly revisit the issue of the zone change when considering the appeal of the special exception permit. The plaintiffs misconstrue our previous opinion.

In a footnote, we stated: "Because we conclude that the intervenors lack standing to bring this appeal, we need not determine whether the trial court's ruling as to the zone change constitutes a final judgment . . . ." Id., 154 n.11. The plain language of that footnote makes clear that we reached no decision on whether and to what extent Judge Owens' decision was a final judgment.

the case only for the limited purpose of allowing the commission to impose reasonable conditions on or make reasonable changes to the development, if it so chose. Because the proceedings on remand cannot deprive the plaintiff of the zone change that the trial court has ordered to be approved, the trial court has rendered a final judgment . . . ." (Internal quotation marks omitted.) Id., 22. Although in that case the trial court had more explicitly ordered the commission to enact the zone change than Judge Owens did in his opinion, there is no practical difference between the two. After Judge Owens sustained the defendant's appeal, the commission had no choice but to approve the zone change if it also approved the related special exception permit.

We reject the plaintiffs' argument that our decision in *Thorne* v. *Zoning Commission*, 178 Conn. 198, 423 A.2d 861 (1979), dictates a different outcome. The central issue in *Thorne* was that the trial court, on appeal from the zoning commission, designated the landowner's property in a new district that neither the landowner nor the commission had sought. We held that such unilateral action on the part of the court was "an improper judicial encroachment upon the administrative function of the zoning commission." Id., 206.

By contrast, in the present case, Judge Owens engaged in no impermissible unilateral action in sustaining the appeal. Indeed, contrary to the plaintiffs' assertions, Judge Owens followed our rule set forth in decisions relating to zoning commission appeals and summarized in *Thorne*: "When, on a zoning appeal, it appears that as a matter of law there was but a single conclusion which the zoning authority could reasonably reach, the court may direct the administrative agency to do or to refrain from doing what the conclusion legally requires. . . . In the absence of such circumstances, however, the court upon concluding that the

action taken by the administrative agency was illegal, arbitrary or in abuse of its discretion should go no further than to sustain the appeal taken from its action." (Citations omitted; internal quotation marks omitted.) Id. Recognizing that, under the town's regulations, the defendant's application for zone change could only be considered in conjunction with its application for the special exception permit, Judge Owens could not properly direct the commission to enact the zone change on remand. Rather, the commission would have to review and decide to approve the defendant's special exception permit in order to enact the zone change.

It is clear that Judge Owens' decision correctly sustained the defendant's appeal from the denial of its zone change application, both in the scope of its holding and the manner in which the court directed the commission to proceed with the defendant's special exception permit. Judge Owens' decision quite simply informed the commission that it was to proceed with the defendant's combined application; if the commission was to find that the special exception permit met its requirements, it would have to approve both the permit and the concomitant zone change.[20]

Having clarified the effect of Judge Owens' decision on the combined application, we turn now to the primary issue of whether the commission proceeded properly following that decision; that is, whether the commission was required to do anything in addition to considering the defendant's special permit in conjunction with Judge Owens' decision.[21] The defendant

---

[20] We note that the plaintiffs appear to agree with this reasoning, stating in their brief: "The DB-1 zone cannot become effective unless and until two events have occurred: (1) a special exception permit, sought in a simultaneous application is granted; and (2) both commission decisions become final."

[21] We emphasize that we make no comment in this opinion to the separate claim raised by the plaintiffs at the trial court, namely, whether the commission employed the appropriate procedures when reviewing and deciding on the defendant's special exception permit application.

claims—erroneously as we noted—that Judge Owens' decision granted the zone change and that, therefore, the commission was required to take no further action. The plaintiffs, relying in large part on the trial court's decision, assert that the commission was required to revote, enact and publish the zone change prior to considering the special exception permit. We believe both of these arguments misconstrue the operation of the town regulations and statutory provisions applicable to the present case.

The various proceedings in this case have led to a rather confusing procedural history. Nevertheless, we believe Judge Owens' decision and the commission's subsequent actions, taken together, can properly be considered as having the same effect as if the commission had initially voted to approve the zone change application and special exception permit at the outset. We see no discernable difference, under the pertinent statutes and town regulations, between the effect of Judge Owens' decision sustaining the defendant's appeal from the denial of its zone change application and the effect of a commission vote approving the application.[22] In either scenario, the zone change would be precluded from taking effect unless and until the commission also voted to approve the related special exception permit. Finally, both the process as it occurred in the present case, and the process as it would have occurred had the commission initially voted to approve the zone change, trigger the same rights of appeal. In the present case, the defendant exercised its right of appeal as the party aggrieved by the commission's decisions;[23] in the case of an initial combined approval, any

---

[22] The reasoning set forth in *Norris v. Planning & Zoning Commission*, supra, 156 Conn. 592, and the plain language of the relevant regulations and statutes are instructive in this regard. See footnotes 11 and 12 of this opinion; General Statutes §§ 8-3, 8-3c, and 8-3d.

[23] As stated in part I A of this opinion, the commission initially denied the defendant's zone change application, and subsequently provided the proper and required notice of its decision.

other aggrieved party with legal standing could exercise its right of appeal to either the zone change or the special exception permit.

We also reject the plaintiffs' argument that the commission's action failed to satisfy the requisite publication requirements under *Wilson* v. *Planning & Zoning Commission*, supra, 260 Conn. 399. First, *Wilson* involved a straightforward appeal of a zoning decision enacted by a zoning commission, which had set an effective date of the zone change as the same day it published notice of the change. This court noted that the sole issue turned on the application of § 8-3 (d), requiring publication of notice prior to the effective date of a zone change. We found that because the commission's action "failed to comply with [the] statutory procedures, its zone change was void." Id., 404. The present case, by contrast, is not the ordinary zone change appeal case. In particular, the commission's actions differ from those in *Wilson* in that here it was required under the town's regulations to consider a zone change application and special exception permit application simultaneously. Equally significant, and also unlike *Wilson*, is the fact that the issue of the propriety of the zone change in this case has already been appealed and litigated.

We find further support for our conclusion when we review the underlying purpose of the rule addressed in *Wilson*. The function of the publication and effective date requirements set forth in the relevant statutes simply is to provide notice for appeal purposes.[24] "We repeatedly have held that the fundamental reason for

[24] We note that we have also reached the same conclusion in the context of the hearing and notice requirement of the subdivision application statute. See *Hubbard* v. *Planning Commission*, 151 Conn. 269, 271, 196 A.2d 760 (1963) ("[i]t is the obvious purpose of [General Statutes] § 8-28 [in the subdivision approval process] to afford a right of appeal to a party aggrieved by the action of a planning commission").

the requirement of notice [in § 8-3] is to advise all affected parties of the opportunity to be heard and to be apprised of the relief sought." (Internal quotation marks omitted.) *Roncari Industries, Inc.* v. *Planning & Zoning Commission*, 281 Conn. 66, 73–74, 912 A.2d 1008 (2007); see also 9 R. Fuller, supra, § 24:2, p. 720 ("[t]he purpose of publication is to give constructive notice to interested persons that a decision has been reached and to start the fifteen-day time period for the taking of an appeal to the Superior Court"). Here, the appeal process for the zone change has already occurred. Thus, an expansive reading of *Wilson* and § 8-3 (d) in this case would run afoul of the plain language of the statute, and provide litigants such as the plaintiffs the ability to relitigate a final zone change decision in towns or municipalities that follow procedures similar to the zoning regulations of the town.[25]

Further, because the parties in the present case actually engaged in the appeals process following the commission's initial decision regarding the zone change, it would be superfluous for the commission to reissue notice after Judge Owens' decision. We note that the plaintiffs contend that one of the primary reasons additional notice of Judge Owens' decision is necessary is so that the plaintiffs can "exercise their constitutional and statutory right of appeal." In this regard, the plaintiffs appear to believe that they have a right to relitigate the zone change following Judge Owens' decision. This argument is misplaced. "We have frequently held that

[25] We have reached similar conclusions when discussing challenges to the adequacy of notice: "In reviewing the adequacy of the notice of decision employed here, we are mindful of the purpose such notice is meant to serve. The right of appeal, if it is to have any value, must necessarily contemplate that the person who is to exercise the right be given the opportunity of knowing that there is a decision to appeal from and of forming an opinion as to whether that decision presents an appealable issue." (Internal quotation marks omitted.) *Bridgeport Bowl-O-Rama, Inc.* v. *Zoning Board of Appeals*, 195 Conn. 276, 281, 487 A.2d 559 (1985).

when a party has a statutory right of appeal from the decision of an administrative officer or agency, he may not, instead of appealing, bring an independent action to test the very issue which the appeal was designed to test." *Country Lands* v. *Swinnerton*, 151 Conn. 27, 33, 193 A.2d 483 (1963). "Moreover, we have ordinarily recognized that the failure of a party to appeal from the action of a zoning authority renders that action final so that the correctness of that action is no longer subject to review by a court. . . . [T]hese rules rest in large part, at least in the zoning context, on the need for stability in land use planning and the need for justified reliance by all interested parties . . . on the decisions of the zoning authorities." (Citations omitted.) *Upjohn Co.* v. *Zoning Board of Appeals*, 224 Conn. 96, 102, 616 A.2d 793 (1992).

Finally, the commission referenced the zone change both in the special exception permit and in the published notice. We conclude that, to the extent that it remained necessary, this accomplished the intent of the notice and publication provisions regarding zone change and special permit applications. Cf. *Bridgeport Bowl-O-Rama, Inc.* v. *Zoning Board of Appeals*, 195 Conn. 276, 282, 487 A.2d 559 (1985) ("It is not essential that a notice of decision expressly state every consideration that might be relevant to any party who might want to appeal the board's decision. It is only necessary to provide notice adequate to ensure a reasonable opportunity within the applicable time constraints to obtain the information required to form an opinion whether or not to appeal. The reference to [an] earlier notice of hearing in the notice of decision accomplished this result.").

To summarize, on the basis of the preceding analysis of the effect of Judge Owens' decision and the commission's action, it is apparent that the commission acted within the scope and intent of the town regulations and

applicable statutory provisions when it approved the defendant's combined application. First, when the commission approved the special exception permit application on September 21, 2006, it must necessarily have approved the zone change application at the same time it incorporated Judge Owens' decision into its approval of the special exception.[26] Second, when the commission issued notice of the special exception permit approval, it included within the notice reference to the fact that the subject property was located within a DB-1 zone. Finally, any "effective date" for the zone change would also necessarily have to fall after the publication of this notice, because the zone change would only be effective upon the special permit becoming effective. Because § 8-3d and the special permit itself condition the effectiveness of a special permit application on the recording of the application in the land records of the town—and this could not occur until the defendant received notice of the approval of its permit—the zone change would only be effective after notice. These actions track the requirements of the town zoning regulations, which state that in design districts, "the existing use of land shall not be changed . . . until . . . a [s]pecial [e]xception shall have been granted, where required by these regulations." Monroe Zoning Regs., § 117-900 (A); see footnote 11 of this opinion.

For the foregoing reasons, we conclude that the trial court too narrowly construed the effect of Judge Owens' decision as well as the actions taken by the commission in reviewing and approving the defendant's application

---

[26] We find it immaterial that the commission may have believed that the zone change had already occurred as a result of Judge Owens' decision. Had the commission voted to deny the special permit application, the zone change would have been precluded from taking effect regardless of the commission's understanding of Judge Owens' decision. In that connection, only the commission's actions are relevant to our analysis, not the commission's beliefs.

for the special exception permit. We accordingly reverse the judgment of the trial court. Our holding here is limited to clarifying the only issue reached by the trial court, which is whether the commission acted properly with respect to the zone change application and Judge Owens' decision when it subsequently considered the defendant's related special exception permit application. Because the trial court did not reach the issue of whether the commission followed the proper procedure, regulations and statutes in approving the special exception permit, we do not reach that issue. Therefore, we remand the case to the trial court for consideration of all of the plaintiffs' remaining claims addressing the validity of the commission's action in connection with the defendant's special exception permit application.

The judgment is reversed and the case is remanded with direction to consider the plaintiffs' remaining claims.

In this opinion the other justices concurred.